HEMPHILL, Cii. J.
The only question in this cause is, as to the competency of the wife of the appellant to make the deed of gift to the land in con-She had been abandoned for more than five years previously by her who had sought an asylum on the Rio Grande, under the protection and jurisdiction, de facto, of the enemy. During that period she remained without aid or assistance from him, burthened with the charge of taking care of herself and family — managing the business herself, and bringing suits in her own name, &c. There was evidence that she had a large stock of cattle, and that she was never in want; but there was no proof as to (lie time at which these cattle were acqnired--whether after the husband’s retreat to thé Rio Grande or before — or whether they were common property, or the property of the husband or of the wife. There was evidence also that she had a power of attorney from her husband to sell all his lands. It was said, also, that she had visited her husband on the Rio Grande; but there was no proof' that he had supplied her with any funds. The title to the property of which the lands embraced in the deed of gift formed a part, was made to the wife in her own name in 1838, about two years after the absence of the husband, and nearly four previous to his return — the title reciting that the purchase money was paid by the wife.
Did tlie wife under such circumstances have the power of disposing of such property as if she had been a feme sole ? The wife by marriage is placed under many disabilities. She is divested of the power of free disposition of her own property, unless joined in the conveyance by her husband and acknowledged before an officer that it was made with her consent. Iler separate property is under his management; and he alone has the power to dispose of the common stock of gains. " And, generally, she has no power to contract or be bound by contracts, unless as the agent or through the assent of the husband — con,tracts for necessaries for herself and children and the benefit of her separate property excepted. She oaunot sue-for her own effects, unless joined with lior husband ; or on his failure under the authority of the court.
*67 The husband has many and important rights ovar fcho person and property of the v\ he. lie manages her property with
Us incidental rights and advantages. He exclusively can dispose during coverture of the common stock of gains, ami lie is subject to the corresponding responsibility of supporting the wife and family, and of defraying- the charges incident to matrimony.
This marriage being contracted under the laws of Spain, and those laws operating during the greater portion of the absence of the husband, it may be proper to state the incidents of marriage, as affecting property, under those laws. By ilu-m the lmsband had the free disposition' (if not made in fraud of the wife) oí all tiie community property; and the proceeds of tiie separate property oE loth the wife and of the husband fell into and became a portion of tiie common, property. The lmsband was liable for all the matrimonial expenses; and h > could object to sales, by the wife, of her separate property, on the ground that the common stock might be diminished and his ability to support the i-nnily and defray the matrimonial expenses he thereby impaired. His assent was, therefore, necessary to the validity of such dispositions on the part of tiie v, ifc.
It appears, t hen, that the rights and duties of the husband are reciprocal. If he be vested with high powers, he is subject to corresponding- duties. As the land in controversy may be taken (at least for this inquiry) as a portion of the community acquisitions, our attention will be directed to the rights anti obligations of the. lmsband and wife in reference to such property. Tlieir rights of property in the effects of the community arc perfectly equivalent to each other. The difference is this, that, daring- coverture, her rights are passive; his are active. He has tiie free administration and disposition (if untainted by fraud against the wife) of such property; and ho is subject to the corresponding duty of maintaining his wife and family, and defraying, out of this property, tlio debts contracted during- marriage. So long as ho discharges his duty as a husband, his superior rights remain, unquestionably, in full vigor. But when he abandon.-; the administration of the common property,
deserts his wife and country; when he ceases the drichargo of Ins duties, and contributes, in no mode, to the support of his wife and family; reducing the wife to the necessity of providing for them, and of taking care of the common property, or otherwise suffering it to go to waste; and when this absence is prolonged several years — do not his rights over tlio effects of the community, from the nature of tilings, cease? and are not the passive rights of the wife quickened into vigorous activity ?
She is neivs-arily compelled to assume the position of the lmsband ; to discharge his duties and incur his responsibilities; and her powers should correspond to the position which, by tiie default of the lmsband, she is thus compelled to assume : and especially should the controlling power of the lmsband, over the goods of the community, be transferred toYlie wife. Her right in that property is equal to that of the husband. During his presence, he has the administration, subject to the trusts incumbent upon the property. This right of control must necessarily cease where lie can and will no longer exercise it; and the wife, the other joint owner, must be vested with the authority, or it cannot exist anywhere. The right of tlio husband, under our laws, in tiie ganancial property, and in the proceeds of tiie wife’s labor, care, and diligence, as a portion of that property, differs materially from his right at common law, in the personal property of the wife, and to tiie fruits of her personal labor and industry. Under the common law, these become exclusively bis own property — subject to his disposition at pleasure. But the rigor of that law, adverse as it is to the rights of property in the wife, has been greatly relaxed, to meet, among other exigencies, such an one as is presented by the circumstances of this case. The general rule at common law now is, that, where a lmsband absolutely deserts'his wife, or leaves the State without any intention of re,turning, or becomes the subject of a foreign State, or is civiliter martinis, his wife is regarded as a feme sole, and may hold property by deed, make contracts, and sue and be sued upon them. (Wheaton’s *68 Selwyn, Tit. BaroN & Feme ; 15 Mass. R., 31; 17 S. & R., 130.) Many other cases might he cited; hut these will he sufficient, as in them the doctrines are fully illustrated and supported by both reasoning and authority. The broad principle is asserted, in the case from Sergeant and Rawle, that the desertion of the husband, and the cessation of his wonted duties, vest a separate property in the wife in the acquisitions made during his desertion. The miserable condition of wives whose husbands have renounced their society and country, if the disability of coverture should be applied to them during' the continuance of such desertion, is graphically depicted in the ease from Massachusetts. If that were the case, say the court, “ they could obtain no credit “ oil account of their husbands; for no process could reach him ; and they could “not recover for a trespass upon their persons or property, or for the labor “ of their hands. They would be left,'then, wretched dependents upon charity, “or driven to the commission of crimes, to obtain a precarious support.”
Under the rules at common law, there the property acquired in this case by the wife, during the absence of her husband, would be separate property.
But it is contended by the appellant, that, though it were separate property, yet the wife, under the statute, could not alienate land, unless in the mode pointed out by the statute, and the case relied on, from 1 Peters, 108, gives some countenance to the position. But the position seems to me to be positively repugnant to the whole doctrine in relation to the rights in case of desertion or absence by the husband, or his abjuration of the country, &c. The default of the husband and the necessity of the wife’s situation require and the law authorizes her to assume his position for the care of herself, her family and property, and vest her with the capacity of a feme sole. Ilis desertion and absence áre the foundation of her new rights and authority. His absence or civil death are prerequisite to the acquisition of these rights by the wife.
Tlie joining of the husband in the wife’s conveyance, her privy examination and declaration that she acts freely, all presuppose that a husband is present and may be exercising undue influence over her. But how can these formalities be requisite in cases where the rights of the wife (and they are acknowledged by law) depend upon the supposition that, de facto, she has no husband? How could he join in a conveyance when his absence is the ground upon which she acquired her right of property, aud'upon which she can make contracts, and sue and be sued in her own name? In the case from Massachusetts, it is said, in case of abjuration of the realm by the husband, the wife may alien her land without her husband. (Co. Hitt., 132, a; 2 Vernon, 101, G14.) It is not material in this 'case to consider whether acquisitions made by the wife during desertion of the husband belong to the community or to her in her separate right. Under certain circumstances, they would no doubt be separate property. But if they belong to the community, his desertion of wife and country vests in her the administration of such property, and confers upon her every right of control or disposition which he could have enjoyed or exercised, had he remained in the discharge of his duties as a husband.
The facts of her visits to the Rio Grande cannot affect her rights. The object of her visits is not known. One thing is certain: lie was not by them induced to return and resume either his marital rights or duties.
We are of opinion that there was no error in the judgment; and it is ordered that the same be affirmed.
Judgment affirmed.
Note 24. — Cheek v. Bellows, 17 T., 613; Fullerton v. Doyle, 18 T., 3; walker v. Stringfellow, 30 T., 670; Forbes v. Moore, 32 T., 195.