### SLAUGHTER *v.* GLENN.

1. Lands in Texas belonging to a married woman are termed in that State her "separate property," and she has in equity all the power to dispose of them which could be given to her by the amplest deed of settlement.

2. During the absence of her husband, when she had the exclusive management of her interests, a married woman owning in her own right such lands conveyed them to A. by deed, which she acknowledged before the proper officer, as if she were a *feme sole*. She invested the purchase-money in another tract, and A. sold the lands to B. Some years afterwards, she and her husband brought an action to recover them. B. filed his bill, praying that the action be enjoined and his title quieted. *Held*, that, in view of the decisions of the Supreme Court of Texas as to the effect of such a conveyance, he was entitled to the relief prayed for.

APPEAL from the Circuit Court of the United States for the Western District of Texas.

The facts are stated in the opinion of the court.

*Mr. W. S. Herndon* for the appellants.
*Mr. Isaac C. Collins, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

There is a considerable mass of testimony in the record, but

the facts are few, and we think there is nothing material about which there is any room for doubt.

In the year 1863, and for some years previous, the appellant, Mrs. Slaughter, had owned in her own right the premises in controversy in this case. She was a widow when she married Slaughter, and then possessed the property. It is situated in Marion County, in the State of Texas. The land was poor and the place very unhealthy. In the spring of that year, Dunn & Co. were desirous to put up a packing establishment, and were looking for property to buy with that view. Her agent offered the premises in question. At his request Dunn called upon her. She asked $8,400. Dunn & Co. agreed to give it, and paid her in Confederate money. On the 21st of July, 1863, the payment was completed, and she executed a deed to the purchasers. She was the sole grantor, and the certificate of acknowledgment was silent as to any separate and privy examination. The certificate is as if she were a *feme sole*. Gray, the officer who took the acknowledgment, testified as follows : —

" I witnessed and attested said deed at the request of Mrs. E. J. Slaughter, the maker thereof. I took her acknowledgment to said deed. I asked her if she acknowledged it to be her act and deed, for the uses, purposes, and considerations as therein stated and expressed ; she answered that she did. I cannot remember positively what other questions were propounded to her or what answers were made, but I think I asked all the questions usually asked by county clerks in taking acknowledgments, as required by the statute. She signed the deed, after an explanation of its contents made by me to her. Her husband, M. T. Slaughter, was at that time absent in the army. After the examination and explanation of the contents to her by me, she signed the deed, and acknowledged it to be her act and deed. She acknowledged it, so far as I could tell, freely and willingly.

" At the time of the making the deed, M. T. Slaughter was absent. He had been absent about four months, not less than four months. He was a soldier in the Confederate army. He was absent for more than twelve months; I cannot remember positively how long."

About the time the transaction was closed she bought another tract of land situate in the neighborhood, and paid for it out of the money she had received from Dunn & Co. A deed to her was duly executed on the 3d of August following. The tract is fully described in the bill, and a copy of the deed is in evidence. The property was known as the Culbertson farm. Before selling and buying, she consulted with her friends, and they earnestly advised both as highly advantageous.

The firm of Dunn & Co. consisted of Dunn and Price. Price sold and conveyed to Dunn his share of the premises in controversy, and Dunn sold and conveyed the entire premises to Joseph Glenn, since deceased.

On the 26th of May, 1863, the appellant, M. T. Slaughter, left his home, and entered into the Confederate military service in the State of Louisiana. He lost an arm by a casualty of the war, and thereupon returned home and remained there. He was absent about a year. He had no means. His wife had considerable property. During his absence she managed and controlled every thing as if she had been a *feme sole*. His ever returning depended upon the chances of the war. Upon getting back, he expressed himself as highly gratified by the sale and purchase she had made. She had constantly done the same thing. On the 3d of June, 1868, Slaughter and wife conveyed an undivided half of the premises in controversy to one of their counsel in the court below, with a special covenant against all persons claiming under them. By the same instrument it was provided that the learned gentleman should prosecute a suit for the recovery of the premises without any other compensation, and that in the event of defeat he should pay all costs and damages and save his clients harmless. An action of trespass to try title was instituted in the proper State court, in the name of Slaughter and wife. Glen thereupon filed this bill to quiet his title. Upon his application, both cases were removed to the Circuit Court of the United States. That court decreed a perpetual injunction in the action at law, and the equity case has been brought here for review.

The controversy between the parties is to be decided accord-

ing to the jurisprudence of Texas. We must administer the law of the case in all respects as if we were a court sitting there, and reviewing the decree of an inferior court in that locality. *Olcott* v. *Bynum*, 17 Wall. 44.

The case on the part of the appellants wears the appearance of a conspiracy to defraud, which, to say the least, does not commend it to the favorable consideration of a chancellor.

A court of equity must find itself hard pressed in the other direction to refuse the relief sought by the bill upon the facts disclosed in the record. We do not find ourselves embarrassed by any such considerations.

The only objections taken by the appellants to the title of the appellees' testator are that Slaughter was not a party to the deed of his wife to Dunn & Co., and that the certificate of her acknowledgment does not conform to the requirements of the statute of the State touching deeds by married women of their own property.

Before considering that subject, it is proper to advert to two other points which arise upon the record.

All the means, legal and equitable, which Dunn had of protecting his title passed by assignment under his deed to Glenn. *Kellogg* v. *Wood*, 4 Paige (N. Y.), 578.

Mrs. Slaughter paid for the Culbertson farm entirely out of the proceeds of the property which she conveyed to Dunn & Co., and there was an overplus left in her hands. If we were constrained to hold that she is entitled to recover back those premises, it would then have to be considered whether she should not be regarded as a trustee *ex maleficio*, and required to convey to the appellees, as representing Glenn, the Culbertson farm, in which the money of Dunn & Co. was invested. *Oliver et al.* v. *Piatt*, 3 How. 333; *May* v. *Le Claire*, 11 Wall. 217.

Again, it is the settled law of Texas that if an infant convey, and after coming of age choose to rescind, he must, as a general rule, restore what he has received, before he will be permitted to recover; and the same rule is applied to married women under like circumstances. *Womack* v. *Womack*, 8 Tex. 397.

But it is necessary to pursue these views, because we find

the propositions of the appellants touching the execution of the deed to Dunn & Co. wholly untenable.

The common-law rights and powers of *feme coverts* have been considerably modified in Texas. There, real estate belonging to her, whether acquired by descent or purchase in the usual way, is termed, though not technically so, her "separate property," and she has in equity all the power to dispose of it which could be given to her by the amplest deed of settlement. The statute regulating conveyances to pass the legal title is not unlike those of most of the other States. It provides that the "husband and wife having signed and sealed any deed or other writing purporting to be a conveyance of any estate or interest in any land, slaves, or other effects, the separate property of the wife, . . . if the wife appear before any judge," &c., "and being privily examined by such officer apart from her husband, shall declare that she did freely and willingly sign and seal the said writing, to be then shown and explained to her, and wishes not to retract it, and shall acknowledge the said deed or writing so again shown to her to be her act, thereupon such judge or notary shall certify such privy examination, acknowledgment, and declaration, under his hand and seal, by a certificate annexed to said writing, to the following effect or substance, viz.," &c. The form is then given. 1 Laws of Texas (4th ed.), p. 261, art. 1003.

In the administration of this statute by the courts of the State a singular anomaly has grown up. The following adjudications will show the changes in the common law and the anomaly to which we have referred.

In *Womack* v. *Womack* (*supra*), a husband and wife conveyed a slave belonging to her, and warranted the title. There was no certificate of acknowledgment. The court said the statute which prescribed the mode of conveying did not declare void any other mode, and that it seemed, "from its terms, to have but one object in view, and that was to secure the freedom of will and action on the part of the married woman. If she was free to act, and so declared it, and that she did not retract, all the circumstances concurred which were made necessary to pass the title to the property." The deed was held to be valid.

In *Wright* v. *Hays* (10 Tex. 130), the husband was from home,

at a distance, for nearly six years. During his absence his wife visited him. At the end of that time he returned home and remained there. In the mean time, the wife bought land, took the title in her own name, and conveyed a part of it to her son by a former husband. After her death, suit was brought to defeat the conveyance. The same objections were made to the deed as here. The court said: "The joining of the husband in the wife's conveyance, her privy examination and declaration that she acts freely, all presupposes that a husband is present and may be exercising undue influence over her. But can these formalities be requisite in cases where the rights of the wife (and they are acknowledged by law) depend upon the supposition that *de facto* she has no husband?" The deed was sustained, and judgment was given for the defendant.

In *Dalton* v. *Rust* (22 id. 133), the vendors had given a title-bond to the vendee for a tract of land described by metes and bounds. The vendee died before making full payment. The vendors filed a petition in the county court for the sale of the premises and the payment of the balance due. A sale was accordingly made, and the amount due paid out of the proceeds. The purchaser sued to recover possession, according to the metes and bounds set forth in the bond. One of the vendors set up as a defence that she was, when she executed the bond, and had continued to be, a married woman, and that she did not acknowledge the bond according to the requirements of the statute. It was held that she was estopped by the proceedings in the county court and the receipt of the purchase-money from denying the validity of the bond, or the right of the purchaser to all the lands within the metes and bounds set forth in the original contract which she had executed. She was treated in all respects as if she had been a *feme sole* from the outset.

In *Clayton's Adm'rs and Others* v. *Frazier* (33 id. 91), the plaintiff sued the heirs of a married woman for the title to land which had been her property, and for the conveyance of which, on the payment of the purchase-money, she and her husband had given a bond. There had been no examination of the wife as to her voluntary execution of the bond. It was held that the case was a proper one for specific performance. *Womack*

v. *Womack* and *Dalton* v. *Rust* were cited and approved. This is the latest authoritative adjudication in that State upon the subject to which our attention has been called.

These authorities require no comment. The propositions which they establish are decisive of the case before us.

*Decree affirmed.*