## J. H. L. Bray and Wife v. W. B. Aikin.

(Case No. 1736.)

1. Evidence.— One wishing to introduce parol evidence of the contents of a record alleged to be destroyed, proved that the building in which it was kept had been destroyed by fire; that the witness had been informed at the proper office that a great many of the records, and nearly all of the office papers, were missing, and that the clerk had told him that they had been burned, but no evidence of inquiry for the particular record, or of its destruction, was shown. *Held*, that parol evidence of its contents could not be received. Following Dunn *v.* Choate, 4 Tex., 14.

2. Bankruptcy.— When property claimed by the bankrupt as exempt property is set aside to him, if the same be subject to a former lien, the right of the lien holder is not affected by the act of the assignee in setting aside the property.

3. Mortgage — Powers — Bankruptcy.— A mortgage with a power of sale, creates a power coupled with an interest, which cannot be revoked by the mortgagor; and the authority of the mortgagee to execute it in the name of the mortgagor, and as his attorney, is not affected by his bankruptcy; the assignee can only take subject to the rights of the mortgagee. Following Hall *v.* Bliss, 118 Mass., 554, and Eyster *v.* Gaff, 1 Otto, 521.

4. Homestead.— See charge of court for an instruction in regard to homestead held correct.

Appeal from Lamar. Tried below before the Hon. R. R. Gaines.

Suit against J. H. L. Bray and his wife, Hattie A. Bray, for the recovery of one hundred and ninety-seven acres of land in Lamar county. Plaintiff sued out a writ of sequestration; and the defendants failing to replevy the plaintiff replevied.

Defendants Bray and wife answered:

1st. General demurrer.   .   .   .

3d. General denial.

4th. Plea of "not guilty."

5th. Claimed the land in controversy as the homestead of themselves and family, and had so claimed it since they purchased it and before the execution of either of the deeds of trust under which plaintiff claimed title, to wit, since 1873, and that the same was still their homestead.

That on the 4th day of April, 1876, J. H. L. Bray was adjudged a bankrupt, and that subsequent thereto, and on the same day, the plaintiff W. B. Aikin caused the land in controversy to be sold by J. D. Wortham, trustee in a deed of trust, to secure a debt to plaintiff, in which deed of trust the wife, Hattie A. Bray, did not join; that such sale was made after J. H. L. Bray was adjudged a bankrupt, which fact was known to the trustee and to plaintiff; that no consideration was paid at such sale, and the land purchased by plaintiff and deed made to him by the trustee; no consideration paid or credit entered on plaintiff's debt, but that thereafter plaintiff proved up his *entire* claim against the estate of J. H. L. Bray, a bankrupt, without allowing any credit for the amount bid at the sale.

That on the 9th day of November, 1877, in the United States district court at Tyler, the land in controversy was adjudged to be the homestead of Bray and wife, and set aside as such, in a proceeding between J. H. L. Bray and the register in bankruptcy; that prior to this proceeding W. B. Aikin had proven up his claim against Bray, with his lien given by the said deed of trust.

Defendants further set forth that on the 22d day of December, 1877, one H. D. McDonald, trustee in a deed of trust executed by J. H. L. Bray and wife, sold the land in controversy to W. B. Aikin for $100, and made him a deed for it. Charged that the sale was fraudulent, made at the instance of plaintiff, for whom the trustee (McDonald) was attorney, and without the knowledge, consent or request of the beneficiaries in the deed of trust (naming them). That the sale was made in a secret manner, when very few persons were present, and no other land was being sold, and at a grossly inadequate price — $100,— the premises being worth at the time $5,000. Charged collusion between the trustee and Aikin to defraud defendants.

Verdict and judgment for plaintiff (Aikin), from which Bray and wife appealed and assign seven separate errors.

The pleadings were lengthy, and a statement of their contents, of the facts in evidence, or of the assignments of error, would not make more plain the opinion, which indicates the errors complained of, except the following charge of the court, to which exception was taken:

"In regard to the question of homestead, I instruct you that a family are entitled to but one homestead, and that is the place which is used and occupied by them as a family residence. If, before the purchase by Bray of the land in controversy, he owned another

place which he then occupied as a family residence, and he continued to reside with the family upon such other place until the time of the execution of the deed of trust, and was residing thereon at that date, I instruct you that the place upon which he lived with his family at the time was his homestead, and that the land in controversy was not his homestead, although he may have intended to occupy the latter as his family residence at some future time; and may have purchased it and made improvements upon it with that view.

"The declaration of defendant J. H. L. Bray as to his intentions in regard to the land in controversy is evidence to which you are entitled to look in discovering his purpose in regard to the property; but the mere fact that he may have intended it as his homestead (if a fact), and of his having improved the same with that view (if such be the fact), without removal or abandonment of his previous residence, is not sufficient to make it a homestead."

*Hale & Scott,* for appellants, cited: Thompson on Homesteads, secs. 247, 248, 249, 251 and 252; Bump on Bank'y, secs. 5075, 5106, and notes on pp. 606-9.

*Dudley & McDonald,* for appellee, cited: Morrison *v.* Loftin, 44 Tex., 23; McCoy *v.* Crawford, 9 Tex., 356; Freeman on Judgments, secs. 154 and 252; Bump on Bankruptcy, pp. 152, 153, and sec. 5045 and notes; Hall *v.* Bliss, 118 Mass., 554; Eyster *v.* Gaff, 1 Otto (91 U. S.), 521; Perry on Trusts, vol. 2, sec. 602*h;* Bump's Bankruptcy (8th ed.), pp. 163 to 168, also p. 609, third note from bottom of page; McGready *v.* Harris, 9 B. R., 135; S. C., 54 Mo., 137; Roden *v.* Jaco, 17 Ala., 344; *In re* Iron Mountain Co., 4 B. R., 645; S. C., 9 Blatch., 320; *In re* Bowie, 1 B. R., 628.

Delany, J. Com. App.— Our opinion is that the first assignment of error cannot be maintained. Appellant assigns as error the ruling of the court "in refusing to permit defendants to prove by W. B. Aikin and his attorney, H. D. McDonald, that plaintiff had proven up his entire claim against J. H. L. Bray in bankruptcy, after having offered preliminary proof of the loss (by fire) of the records and papers of the register in bankruptcy, and after admitting evidence that the claim had been filed in the office of S. J. Newton, register in bankruptcy, with an affidavit attached," etc.

Objection was made that this evidence was secondary and that no sufficient proof had been made of the loss of the primary and

better evidence. Both parties treated the evidence offered as secondary, and the defendants, in order to show the loss of the original papers, proved by the witness, Wright, that the court building in Tyler, which contained papers, etc., had been burned; that upon inquiry at the office he found that a great many of the records, and nearly all of the papers of the office, were missing, and was told by the clerk that they had been burned.

No inquiry, however, was made for the papers here in question, nor was there any evidence of their destruction. Inquiry should have been made for these particular papers, and, if they were lost, the loss should have been proven by the proper custodian of the papers, if he could be found.

In the case of Dunn v. Choate, 4 Tex., 14, where a copy of a deed was offered with proof that the original had been in the hands of a person who said it was lost, the court said that this was not sufficient. The loss should have been proven by the testimony of the person who had possession of the deed, if he could be found.

The second assignment complains of the ruling of the court in excluding from the jury, after it had been read, a transcript from the proceedings of the bankrupt court, in which it was shown that, in a proceeding between Bray and the assignee, the latter had been ordered by the court to set aside to Bray as his homestead the land now in controversy.

Our opinion is that the court did not err. Long before the proceedings in bankruptcy commenced, the plaintiff in this suit held a valid lien upon the property.

If the assignee did set aside this land as the homestead of the bankrupt, the latter would, nevertheless, take it subject to the lien.

"When property claimed to be exempted is subject to a mortgage, the assignee will discharge his whole duty if he designates the exempted property, and then leaves the bankrupt and the mortgagee to settle their respective rights by themselves." *In re* Lambert, 2 B. R., 426; Bump on Bankruptcy (10th ed.), p. 519.

In his answer the defendant had charged that the sale made by Wortham, trustee, to the plaintiff, and under which the plaintiff here claimed the property, was void, because it was made after Bray was adjudged a bankrupt.

The court sustained an exception to the answer. This ruling is presented in the third assignment of error.

Under this assignment appellant presented the following proposition: "The trustee's sale made by J. D. Wortham, after Bray was adjudged a bankrupt, was without right, null and void, and conferred

on Aikin, the purchaser, no title." We cannot accept this as the law. See Bump (10th ed.), p. 177. It must be borne in mind that Bray had given this deed of trust to Wortham with power of sale long before his bankruptcy, though the power was executed afterwards.

This precise state of facts came before the supreme court of Massachusetts in the case of Hall v. Bliss, 118 Mass., 554, Chief Justice Gray delivering the opinion. In that case Hall and wife executed a mortgage with power of sale to A. T. Stewart, upon certain property in Massachusetts in 1870.

On December 1, 1871, Hall being still the owner of the property subject to the mortgage, was adjudged a bankrupt. On December 13, 1871, the mortgage debt being unpaid, Stewart sold the property under the power. The court held the sale good notwithstanding the bankruptcy of Hall.

Upon that point the chief justice says: "The power being coupled with an interest in the estate conveyed, could not be revoked by the mortgagor; and the authority of the mortgagee to execute it in the mortgagor's name, and as his attorney, was not affected by his bankruptcy, for his assignee could only take subject to the rights of the mortgagee."

Another interesting case is that of Eyster v. Gaff et al., 1 Otto (91 U. S.), 521. In that case one McClure had given a mortgage to Gaff upon certain lots in Denver City, Colorado. Gaff brought suit on the mortgage in the state court, and a decree of foreclosure was rendered on July 1, 1870. Under this decree Gaff bought the lots. But in May preceding, McClure had been adjudged a bankrupt and his assignee appointed. He filed his schedule, in which the lots with Gaff's mortgage upon them were set out. The defendant in the suit was a tenant of McClure, and defended his possession on the ground that the foreclosure proceedings, after the adjudication of bankruptcy and the appointment of the assignee, were void. The supreme court of the territory pronounced the title of Gaff valid on an error. The supreme court of the United States affirmed the judgment.

We conclude that the court below did not err in sustaining the exception above set forth.

In our opinion there is no merit to the homestead claim as set up by the defendants, nor was there any error in the charge of the court upon that part of the case.

We conclude that the judgment should be affirmed.

AFFIRMED.

[Opinion adopted January 29, 1884.]