## TIDE WATER OIL CO. et al. v. ROSS et al.

### No. 10680.

Court of Civil Appeals of Texas. Galveston.

Dec. 22, 1938.

Rehearing Denied Jan. 12, 1939.

· E. E. Sanders, of Fort Worth, A. M. Barton and George Burkitt, both of Palestine, Dwight L. Simmons and J. Hart Willis, both of Dallas, James & Conner, of Fort Worth, Vinson, Elkins, Weems & Francis, of Houston, and Thompson, Knight, Baker, Harris & Wright, of Dallas (D. L. Simmons and W. R. Harris, both of Dallas, of counsel), for appellants.

V. M. Johnston and Clay Cotten, both of Palestine, Geppert, Geppert & Victery, of Teague, and C. S. Bradley, of Groesbeck, for appellees.

MONTEITH, Special Commissioner.

This is a suit in form of trespass to try title brought by Falvie L. Ross, and after her death prosecuted by Charlie Ross, by next friend, and L. C. Jefferson, individually, and as executor of the estate of Falvie L. Ross, appellees, in the district court of Anderson County, against Tide Water Oil Company et al, appellants, for the title and possession of an undivided interest of 34.5284 acres in 83.66 acres of land, more or less, a part of the John Adams League Survey in Anderson County, Texas, and for the cancellation of two mineral and gas leases and a mineral deed covering said land.

The case was tried to a jury with stipulations that the court should find any and all issues relative to the residence of the said Falvie L. Ross during the times of the execution of the instruments above referred to.

Appellees alleged that they were the owners of said undivided interest in said land; that Falvie L. Ross, the wife of Charlie Ross, died on May 22, 1936; that Charlie Ross had been continuously insane for about ten years prior to the date of the trial and was insane at the time of the execution of said instruments; that Charlie and Falvie Ross established and designated the land sued for as their homestead about 1928; had never abandoned or surrendered their homestead rights, and that the land was then the homestead of Charlie Ross; that on or about January 16, 1933, Falvie L. Ross and Charlie Ross executed and delivered an oil and gas lease in favor of John H. Reagan covering said land; that said lease was assigned to P. N. Wiggins, Jr., and that by mesne conveyances the legal title to said leasehold estate became vested in Tide Water Oil Company and Seaboard Oil Corporation; that on September 5, 1933, Falvie L. Ross and Charlie Ross executed a purported ratification of said lease, including therein an additional 1.83 acres of land to P. N. Wiggins, Jr.; that on June 18, 1933, Falvie L.

Ross and Charlie Ross executed and delivered to Wildman Petroleum Corporation a purported mineral deed, and that this mineral estate was by mesne conveyances assigned to defendants herein, Tide Water Oil Company and Seaboard Oil Corporation; that P. N. Wiggins, Jr., at the time of securing said assignment from J. H. Reagan, and at the time of securing said purported ratification lease, was acting for and in behalf of the Tide Water Oil Company and the Seaboard Oil Corporation.

Appellees prayed for judgment awarding them title and possession of the land sued for and cancellation of said mineral leases and mineral deed.

Appellants answered by general denial and plea of not guilty and by allegation that they were innocent purchasers for value.

The jury in response to special issues answered that Charlie Ross was insane at the time he executed said mineral leases and deed and that Falvie and Charlie Ross acquired a homestead right in the land in controversy in 1928 which was never abandoned.

The court, under stipulation by the parties, found that Charlie and Falvie Ross, by virtue of reserved homestead rights in Texas, maintained a residence in Anderson County, Texas, from 1929 to 1936; that they lived in a house owned by them in Crescent, Oklahoma, from 1929 to 1936, and that they established and maintained a residence in Crescent, Oklahoma, from 1929 to 1936, and that they maintained a residence in both Texas and Oklahoma during such period.

Judgment was entered based on said special issues and the court's findings, cancelling said two mineral leases and said mineral deed and awarding appellees the title and possession of the land sued for.

Appellees contend that on account of Charlie Ross' insanity said mineral leases and deed were voidable and that a court order was essential to enable Falvie Ross to convey her separate mineral estate; that in 1928 Charlie and Falvie Ross acquired and thereafter maintained a homestead right in the land in controversy and that said homestead right made a court order essential to enable Falvie Ross to convey the mineral estates.

Appellants, defendants below, contend that Charlie Ross was sane in 1933, but that if he was insane in 1933 his wife could convey her separate mineral estate without his joinder; that the statute permitting a wife, in the event of the insanity of her husband, to apply for an order authorizing her to convey her separate estate without the joinder of her husband was not exclusive but cumulative; that she had the right to convey her separate estate without the joinder of her husband assuming him to be insane; that if the statute was exclusive it did not apply to Falvie and Charlie Ross, because they were resident citizens of Oklahoma in 1933; that Falvie and Charlie Ross never acquired a homestead right in the land in controversy, and that if they had ever acquired a homestead right in said land they had abandoned said right; that the acquisition of a homestead right was, in any event, immaterial in that such homestead right did not deny Falvie Ross the right to convey a separate mineral estate without the joinder of her husband, assuming him to be insane.

The parties made the following stipulations: That Falvie L. Ross was the daughter of John Britton Butler; that he lived on the tract of land involved in this controversy until his death in February, 1932; that Amanda Butler was the wife of John Britton Butler and mother of Falvie L. Ross; that she also lived on the tract of land in controversy with her husband until her death in 1929; that Falvie Ross inherited from her an undivided interest in said land amounting to approximately 17 acres; that the interest of Falvie L. Ross was inherited from her father and mother and constituted her separate estate; that both the father and mother of Falvie L. Ross died intestate; that Falvie L. Ross, at the time of the execution of the oil and gas leases and mineral deed involved in this suit, owned an undivided interest in the tract of 83.66 acres amounting to 34.5284 acres; that title to said 83.66 acre tract was originally in Falvie L. Ross' father and mother as the common source of title and was their community property; that prior to the execution of the oil and gas leases and mineral deed, no order was obtained from any court in Oklahoma or Texas authorizing Falvie Ross to execute such instruments, or any of them, without the joinder of her husband.

The decisive question involved in this appeal is whether or not an order from a district court is an indispensable prerequisite to the conveyance by a wife of her sepa-

rate property or her homestead, if her separate property, or whether the provisions of Articles 4617 and 4618 (R.S.1925) were cumulative of her rights theretofore recognized and not restrictive thereof.

Article 1299 (R.S.1925) provides that husband and wife shall join in the conveyance of the separate property of the wife and that no such conveyance shall be effective until the same shall have been acknowledged by her privily and apart from her husband.

Article 4621 (R.S.1911) defined the separate property of the wife and provided for the sole management thereof by the husband. This article was amended in 1913, Acts 1913, p. 61, c. 32, giving the wife control of her separate property and providing that if the husband refused to join in a conveyance thereof she could obtain authority therefor from the district court of the county of her residence. In 1917, Acts 1917, p. 436, c. 194, a provision was added to said article authorizing such an order where the husband is insane or has permanently abandoned his wife.

The provisions of former Article 4621 which refer to the sale or encumbrance of the separate property of a wife are now embodied in article 4617 (R.S.1925) and the provisions of said article which refer to the disposition by the wife of a homestead, if her separate property, are carried forward in Article 4618 (R.S.1925).

Article 4617 now provides that if the husband is insane, or shall have permanently abandoned his wife, or shall refuse to join in such conveyance, the wife may apply to the district court for an order authorizing her to do so. Article 4618 provides that no sale shall be made of a homestead except where the husband is insane or has permanently abandoned the wife, in which instance she may sell the homestead, if her separate property, in the manner provided for conveying her other separate property.

While the Supreme Court has not decided the exact question involved in this appeal, under present Articles 4617 and 4618 (R.S.1925), both our Supreme Court and our Courts of Civil Appeals have, on numerous occasions, in passing on contracts and conveyances executed prior to the amendments of said articles 1913 and 1917, held that a wife, whose husband was insane or who had been abandoned by her husband, may make a valid contract or conveyance without obtaining an order from a district court authorizing her to do so, and our Courts of Civil Appeals, in passing on conveyances executed subsequent to said amendments, have frequently upheld the authority of an abandoned wife to contract with reference to her separate estate, as if she were a feme sole. Wright v. Hays' Adm'r, 10 Tex. 130, 60 Am.Dec. 200; Clements v. Ewing, 71 Tex. 370, 9 S.W. 312; Clark v. Wicker, Tex.Civ.App. 30 S.W. 1114; Shields v. Aultman, Miller & Co., 20 Tex.Civ.App. 345, 50 S.W. 219; Mabry v. Citizens' Lumber Co., 47 Tex.Civ.App. 443, 105 S.W. 1156; Harris v. Hamilton, Tex.Com.App., 221 S.W. 273; Williams v. Farmers' Nat. Bank, Tex.Civ. App., 201 S.W. 1083; Moss v. Ingram, Tex.Civ.App., 239 S.W. 1029; Royall v. Webster, Tex.Civ.App., 279 S.W. 895.

This court, in the case of Newman v. Gill et al., 243 S.W. 697, involving a contract executed in 1922, upheld the right of an abandoned wife to dispose of her interest in community property. The court in its opinion quotes at length from the following cases [page 700]:

Wright v. Hays' Adm'r, 10 Tex. 130, 60 Am.Dec. 200, "Involved the validity of a deed executed by an abandoned wife. The conveyance was upheld. In the course of the opinion it was said: 'The default of the husband and the necessity of the wife's situation require, and the law authorizes her to assume his position, for the care of herself, her family, and property, and vests her with the capacity of a feme sole. His desertion and absence are the foundation of her new rights and authority. His absence or civil death are prerequisites to the acquisition of these rights by the wife. The joining of the husband in the wife's conveyance, her privy examination and declaration that she acts freely, all presupposes that a husband is present and may be exercising undue influence over her. But how can these formalities be requisite in cases where the right of the wife (and they are acknowledged by law) depends upon the supposition that, de facto, she has no husband? How could he join in a conveyance, when his absence is the ground upon which she acquired her right of property, and upon which she can make contracts and sue and be sued in her own name?'

" 'Harris v. Hamilton [Tex.Com.App.], 221 S.W. 273, involved the validity of a deed of trust executed by an abandoned wife upon her homestead. The lien was

upheld. In that case it was said: * * * "It has been repeatedly held in this state that a married woman, after being permanently abandoned by her husband, can convey her separate property, whether her homestead or not, without the joinder of her husband [citing authorities]. The basis of these decisions is that, while the relation has not been legally severed, a status is created in the wife, in so far as her property rights are concerned, identical with that of a feme sole, giving her full power over her property the same as if the marital relation did not exist." ' "

In the case of Moss v. Ingram, Tex.Civ. App., 239 S.W. 1029, the court said [page 1033]: "In this connection plaintiff in error contends that the rule of decision giving to an abandoned wife the power to convey without the joinder of her husband has been abrogated by the act of the Thirty-Third Legislature, page 61, amending article 4621, R.S.1911, (Vernon's Sayles' Ann.Civ.St.1914, art. 4621). By this act it was provided that if the husband refuse to join with the wife in the incumbrance or conveyance of the wife's separate real estate, she might apply to and obtain permission from the district court to so incumber or convey her said estate without the joinder of her husband. Plaintiff in error insists that this act provides the exclusive and only way in which the wife may incumber or convey her separate real estate without the joinder of her husband, and that the permission of the district court so to do is an indispensable prerequisite. But we do not so construe the act. In our opinion it was cumulative of her rights theretofore recognized, and not restrictive thereof."

In the case of Green v. Windham, 115 Tex. 162, 278 S.W. 1101, the Supreme Court held that, the wife having been legally adjudged insane, the husband by qualifying as administrator of the community estate under the provisions of the law might sell and convey the community estate.

The court in its opinion says [page 1102]: "In the case of Clark v. Wicker (Tex.Civ.App.), 30 S.W. 1114, we held that a married woman whose husband was insane could lawfully convey her separate estate. The idea upon which the holding was based was that the husband had become incapable of consenting and joining her in the conveyance. The matter of personal consent alone was needed, and it being put beyond the possibility of procurement by the insanity of the husband, the resort to guardianship would not attain the end designed by the law; and, unless the wife was permitted to alienate the property through her own separate act, it would amount to a destruction of her property rights. In line with this idea is the proposition, frequently decided, that a married woman, when separated from her husband, may separately convey her separate estate (Wright v. Hays' Adm'r, 10 Tex. 130, 60 Am.Dec. 200)."

█ The abandonment of the wife by her husband does not create a situation of greater necessity for herself, her family or her property, than is created by the civil death brought about by the insanity of her husband. For this reason, under the above authorities, we think that the insanity of Charlie Ross operated to remove the disabilities of coverture of Falvie Ross and that she thereby became reinvested with authority to convey her separate estate without securing the permission of the district court to do so.

█ We are strengthened in this opinion by the fact that the wording of Articles 4617 and 4618 (Revised Statutes of 1925) are permissive rather than mandatory.

Article 4617 provides, "* * * the wife *may* apply to the district court of the county of her residence" for authority to convey her separate property.

Article 4618 provides, "* * * the wife *may* sell and make title to any such homestead, if her separate property, in the manner herein provided for conveying or making title to her other separate property."

The word *may* used in each article indicates a legislative intent to provide for the wife an additional method, which may be made a matter of record, for conveying or encumbering her separate estate where she has been permanently abandoned by her husband, or where he has become insane. 39 Tex.Jur. p. 17; San Angelo Nat. Bank v. Fitzpatrick, 88 Tex. 213, 30 S.W. 1053; Samuell v. American Mortgage Corporation, Tex.Civ.App., 78 S.W.2d 1036; American Mortgage Corp. v. Samuell, 130 Tex. 107, 108 S.W.2d 193.

The Court found that Charlie and Falvie Ross by virtue of reserved homestead rights in Texas maintained a residence in Anderson County, Texas, from 1929 to 1936, and that they lived in a house owned by them in Crescent, Oklahoma, and

that they established and maintained a residence in Crescent, Oklahoma, from 1929 to 1936, and that they maintained a residence in both Texas and Oklahoma during such period.

The courts of this state have held in an unbroken line of authorities that there cannot be two places of residence for a family, separate, and in no manner used together, and both subject to homestead exemption, and further that a homestead may not be acquired by intention at some time in the future to use it as a home, accompanied with preparations to make it suitable as a home. Fort v. Powell, 59 Tex. 321; Barnes v. White, 53 Tex. 628; Whitham & Co. v. Briggs' Estate, Tex. Com.App., 58 S.W.2d 49; Lasseter v. Blackwell, Tex.Com.App., 227 S.W. 944; Hinton v. Uvalde Paving Co., Tex.Civ. App., 77 S.W.2d 733; Rodriguez v. Saegert, Tex.Civ.App., 74 S.W.2d 171; Vaden v. Collier, Tex.Civ.App., 253 S.W. 889.

In applying the rule requiring actual occupancy of the premises claimed as a homestead, if the claimant owned another place which he then occupied as a family residence, other than that claimed as a homestead, even though he may have intended at some future time to occupy the latter as a residence, he is thereby prevented from exempting the latter. 29 C.J. 806; Bray v. Aikin, 60 Tex. 688; Pierce v. Langston, Tex.Civ.App., 193 S.W. 745; Gibraltar Sav. & Bldg. Ass'n v. Harper, Tex.Civ.App., 41 S.W.2d 130.

In her original petition Falvie Ross alleged that she resided in the State of Oklahoma at the time of the execution of the mineral deed to J. H. Reagan, Charlie Ross in his intervention adopted the pleadings of Falvie Ross, and Falvie Ross in her deposition testified that she was living in Crescent, Oklahoma, in 1932, 1933, 1934 and 1935. Under the above authorities these facts precluded Falvie Ross and Charlie Ross from maintaining a homestead on the land involved in this suit at the time of the execution of the instruments above referred to.

The motion filed herein praying for a dismissal of this appeal, which was ordered taken with the case, is overruled.

The facts appearing to have been fully developed, under the conclusions reached, as above indicated, it becomes our duty to sustain the contention of the appellants, and to reverse and render the judgment of the trial court, and to here render judgment for the appellants; and it is so done.

Reversed and rendered.

Opinion adopted by the Court.