GEO. B. ZIMPELMAN ET AL. V. THOS. ROBB ET AL.

*(Case No. 4091.)*

1. POWER OF WIFE TO SELL COMMUNITY PROPERTY.— When the husband deserts the wife, ceases to discharge his marital duties, and contributes nothing to her support and to the support of the children, the power to manage, control and dispose of the community property for purposes of support is transferred to the wife. In such a case, the discretion exercised by the wife in selling the community property will not be reviewed, unless it has been used to perpetrate a fraud on the husband's rights.

2. MARITAL RIGHTS — COMMUNITY PROPERTY.—The titles of the husband and wife to the community property are equal, the only difference being, that the husband retains the power to manage, control and dispose of it, subject to the exception above stated.

3. NOTICE — REGISTRATION.— A purchaser from the husband is chargeable with notice of a prior recorded deed to the community property, executed by the wife after her desertion by the husband.

4. CONVEYANCE BY HEIRS — NOTICE.— A conveyance made *bona fide* by the heir whose title by descent is not of record, conveys title, as against a prior unrecorded deed by the ancestor, if the purchaser from the heir had no actual notice of the prior deed. *(Obiter.)*

5. MARITAL RIGHTS.— In trespass to try title to a tract of land purchased from B., a woman, who from 1837 to 1867 lived with C. as his wife, and which was sold by B. after her desertion by C. The testimony was conflicting as to whether B. and C. were ever actually married. The

court charged that if B. and C. lived together as man and wife, and by virtue of such cohabitation got the certificate which they traded for the land in controversy, then, whether they were married or not, the land was their community property, and that on B.'s abandonment without cause, with nothing left for her support, she would have the right to sell the property for her support. *Held* —

1. Error, as the charge virtually withdrew the issue of the marriage of the parties from the jury.

2. *Quære.* If the certificate was issued to C. because he was living with B. as a married man and the head of a family when they were not actually married, whether the woman would not be entitled to an interest of one-half the certificate, or its proceeds, as the joint acquisition of the partnership?

APPEAL from Travis. Tried below before the Hon. E. B. Turner.

Suit brought August 17, 1875, by appellee Zimpelman and W. W. Briggs, in trespass to try title against the appellees, Robb & Taylor, for 1,712½ acres of the William Lewis, Sr., league and labor of land, in Travis county. Afterwards, during the pendency of this suit, Briggs died; and his wife, who had administered on his estate in Texas, made herself a party plaintiff. On the 28th day of October, 1878, the appellee Dimmitt was made a party defendant by amended petition.

On the 6th of May, 1879, the present appellant filed an amended second supplemental petition against the appellees, to try title to the 1,712½ acres of land. By way of replication to the answer of defendants below, they set up that the property sued for was the separate property of Singleton J. Thompson, their vendor; that he never intermarried with Elizabeth Thompson, defendant's vendor; that Zimpelman and Briggs, when they purchased the land in controversy, had no knowledge that Thompson had abandoned his wife; that it was not necessary for Elizabeth Thompson to sell the land in controversy at the time she sold it, to procure necessaries for herself and family; that her family at the date of sale consisted of herself and William C. Thompson, her son, then a grown man, with whom she lived about as she lived before abandoned by her husband; that W. W. Briggs and Zimpelman were innocent purchasers

of the land from Singleton Thompson; and that they paid for it at the time they bought it, to wit, the 30th of July, 1875, the full contract price, without notice, actual or constructive, of defendant's title or claim.

The defendants, in an amended answer, set up that Singleton J. Thompson and Elizabeth Thompson were married and had been married for a long time prior to January 1, 1867; that at that date they owned the land in controversy as community property; that in 1867 Thompson abandoned his said wife without cause; that he left her in destitute circumstances, and never afterwards made any provision for her support, and that in a suit instituted before he left his wife, in the district court of Travis county, the title to the land in controversy was, on the 3d of July, 1872, adjudged to be in Thompson; that about the 17th of May, 1872, Mrs. Thompson, being the lawful wife of Singleton Thompson, in destitute circumstances and unprovided for in any way by her husband, who had abandoned her, did sell to Emzy Taylor the William Lewis, Sr., league and labor of land to procure necessaries for her support; that Taylor, on the 28th of September, 1873, conveyed to John Hamby 100 acres of land out of the William Lewis, Sr., league and labor. That Hamby, on the 16th of September, 1874, sold that 100 acres to defendant Thomas Robb.

Robb set up his 100 acres of land by metes and bounds, and disclaimed as to the balance sued for.

J. J. Dimmitt filed an answer May 7, 1879, in which he pleaded not guilty.

Defendants filed a trial amendment, in which they alleged that Thompson and Elizabeth Crawford lived together as husband and wife before the issuance to him of the certificate to land, which he traded for the land in controversy, and that the certificate was issued to Thompson by the state of Texas by reason of his living and cohabiting with Elizabeth Thompson as his wife. They further denied all the allegations of plaintiff's second supplemental petition, filed May 6, 1879.

The case was tried by a jury. They found for all of the

defendants under the instructions of the court. There was a judgment for defendants for the land in controversy.

The court charged the jury that if Elizabeth Thompson was the wife of Singleton J. Thompson, and the land in controversy was their community property, and he abandoned her leaving her in destitute circumstances without the necessaries of life, and without making any provision for her support, and that the land in controversy was all she had or they had out of which to support herself, that she had authority to sell the land, and her deed to Emzy Taylor (under whom the other defendants claimed) conveyed to him all the right and title that Singleton J. Thompson had in the land at the time it was executed.

This charge was excepted to by appellants on the ground that a married woman, when abandoned by her husband, could only sell sufficient of the community property to supply her wants and to enable her to administer the community estate.

The appellants asked a charge, which was refused, to the effect that a married woman could only sell sufficient of the community property to supply the necessary wants of herself and family, and to carry on and manage the community property.

Taylor, in the lifetime of Singleton Thompson, bought the land in controversy, and took a deed from Elizabeth Thompson (who claimed to be the wife of Singleton Thompson) and her son William, on May 17, 1872. Defendants held under Taylor. The deed to Taylor was filed for record in Travis county, where the land is situated, May 25, 1872, and recorded on the 4th of June, 1872.

Singleton J. Thompson is the common source of title of appellants and appellees. There was a deed from him to appellants to the land in controversy, July 30, 1875, which was filed for record August 2, 1875, and recorded in Travis county. They paid him for the land when they bought it, and there was no conclusive evidence that they had at that time actual knowledge of the deed to Taylor from Mrs. Thompson and son.

They knew Thompson was married and living in eastern Texas with another woman.

Zimpelman telegraphed to the district clerk of Travis county, who had charge of the record of deeds, before the purchase by appellants from Thompson, and he replied that the records showed no deed from Thompson to the land.

The court charged the jury that if the facts existed which clothed Mrs. Thompson with power to sell the land in controversy, and Taylor placed his deed from her on the records of Travis county before the plaintiffs purchased from Singleton J. Thompson, it was notice to the world that Taylor had bought the land, and that they would find for the defendants.

Appellants excepted to this charge on the ground that the record of Taylor's deed was not notice of his purchase to them.

The appellants asked a charge that if neither Zimpelman nor Briggs had actual notice of the deed from Mrs. Thompson and her son to Taylor to the land in controversy, at the date of their purchase of the land, and that they paid the purchase money for the land at the date of their purchase from Thompson, that then the record of the deed from Mrs. Thompson and her son to Taylor was not notice to plaintiffs. This charge was refused by the court.

Appellants pleaded that they were innocent purchasers of the land in controversy, without notice of the title of appellees, or of the abandonment of Mrs. Thompson by Singleton J. Thompson. That they paid for the land at the date of their deed and purchase.

Other facts are apparent from the opinion.

*Carleton & Robertson* and *John B. Rector* for appellants.

I. A married woman, when abandoned by her husband, can sell enough of the community property to support herself and family, and to manage and administer the remainder, and no more. Pasch. Dig., art. 4642; Wright *v.* Hays, 10 Tex., 131; Cheek *v.* Bellows, 17 Tex., 617; Fullerton *v.* Doyle, 18 Tex., 13; Forbes *v.* Moore, 32 Tex., 199.

II. A deed duly recorded is notice only to subsequent purchasers claiming under the same grantee. Pasch. Dig., arts. 4988, 4989, 4994; Baldwin v. Richardson & Co., 33 Tex., 33; 3 Washburn on Real Property, 319; Wade on Notice, secs. 205, 206, 207, 213, 223, 684; 4 Kent, 179, 180; Crokett & Risque v. Maguire, 10 Mo., 35; 10 Ohio, 83; 7 Watts, 382; Tilton v. Hunter, 24 Me., 31; Bates v. Norcross, 14 Pick., 231.

III. A headright certificate for a league and labor of land acquired by a man and woman unmarried, by virtue of their cohabitation as man and wife in Texas, and the lands purchased therewith and the title taken in the name of the man, cannot be wholly disposed of by the woman when abandoned by the man and left in destitute circumstances.

*Hancock, West & North* for appellees.

I. A married woman, when abandoned for a long period of time by her husband, and left in destitute circumstances without means of support, can, for her support and maintenance, sell so much of the community property as she may deem necessary and sufficient for her support and maintenance; and her deed, made under such circumstances in good faith for the purposes above named, will vest a good title in the purchaser without the signature of her husband to the deed. See cases under this head cited by appellant. Carothers v. McNese, 43 Tex., 224.

II. The court was correct in charging the jury that the registration of the deed from Elizabeth Thompson and W. C. Thompson to Emzy Taylor, was constructive notice to appellants at the date of their purchase, of Taylor's previous purchase of the land in suit, and such a registration is notice to all the world by force of our statutes of registration. Pasch. Dig., art. 4988; Vaughan v. Greer, 38 Tex., 530; Taylor v. Harrison, 47 Tex., 458; Harrison v. Boring, 44 Tex., 255; Le Neve v. Le Neve, Lead. Cas. in Eq., vol. 2, part 1, p. 127.

III. A headright certificate for a league and labor of land,

acquired by a man and woman unmarried, by virtue of their cohabitation as man and wife in Texas, and the lands purchased therewith, and the title taken in the name of the man, can be wholly disposed of by the woman when abandoned by the man and left in destitute circumstances.

IV. The evidence shows that Zimpelman and Briggs had either actual notice of appellant's deed, or had such information as was sufficient to put an ordinarily prudent man on inquiry.

V. Whether Singleton and Elizabeth Thompson were married or not, if they lived together for thirty years as man and wife, were known in the community as such, and had a headright certificate issued to them, and acquired other property when so living together, this relation would allow her to convey, when abandoned by him and left in destitute circumstances, the property so acquired for her support, and he and those holding under him are estopped by it. Babb *v.* Carroll, 21 Tex., 765.

Bonner, Associate Justice.— It is agreed in this case, that Singleton J. Thompson, as the head of a family, obtained, on December 7, 1838, a certificate for one league and labor of land, and which he subsequently traded for 1,948 acres of land in Travis county, embracing the land in controversy.

The testimony is conflicting as to whether he obtained this certificate by virtue of his marriage with one Polly Slaughter, now deceased, or with Elizabeth Thompson, formerly Elizabeth Crawford, under whom appellees, Robb *et al.*, defendants below, now claim.

The testimony is also conflicting as to whether Singleton J. Thompson and Elizabeth Thompson were ever actually lawfully married, though there is testimony tending to prove that they commenced living together about the years 1836 or 1837, and continued to live together as husband and wife, and had several children born unto them, until about the year 1867, when he abandoned her, in Travis county, leaving her in a

destitute condition. Elizabeth Thompson, joined by her son William Thompson, to relieve her necessities, on May 17, 1872, for a valuable consideration, sold the land in controversy to Emzy Taylor, by deed of that date, duly recorded June 4, 1872, and under which appellees, Robb *et al.*, claim title. Subsequently, on July 30, 1875, Singleton J. Thompson, then a resident of Cherokee county, sold the land to George B. Zimpelman and W. W. Briggs, by deed of that date, which was also recorded in Travis county, and under this deed appellants, who were plaintiffs below, claim title.

Judgment was rendered for Robb *et al.*, defendants below, from which this appeal is taken.

The first error assigned is that "the court erred in charging the jury that if Elizabeth Thompson was the wife of Singleton Thompson, and he abandoned her and left her in destitute circumstances, she could sell the whole of the land in controversy."

It has been long since decided by this court, that if the husband deserts the wife, ceases the discharge of his duties, and contributes in no manner to her support and that of the family, then his previous power of management, control and disposition of the community property, which had been passive in the wife, is brought into activity and transferred to her. Wright *v.* Hays, 10 Tex., 133; Fullerton *v.* Doyle, 18 Tex., 12; Forbes *v.* Moore, 32 Tex., 199; Carothers *v.* McNese, 43 Tex., 224.

Under such circumstances, the court should not "weigh in golden scales" the discretion given to the wife in the disposition of the community property for the support of herself and family, and this discretion will not be reviewed, unless, perhaps, in a case where it has been used as a fraud upon the rights of the husband.

Under the testimony we do not think that the court erred in that part of the charge complained of above.

The second error assigned is that "the court erred in charging the jury that the registration of the deed from Elizabeth

and William Thompson to Emzy Taylor was notice to plaintiffs, at the date of their purchase, of said Taylor's purchase of the lands in controversy."

The third error assigned is that "the court erred in refusing to charge the jury that a deed duly recorded is notice only to subsequent purchasers claiming under the same grantor."

These two alleged errors will be considered together.

Whatever general application the rule may have with us, that the record of a conveyance from one stranger to the title to another, will not affect a subsequent purchaser who claims under a different grantor, we do not think the present case comes under that rule.

Under the law as now settled by the former decisions of this court, the titles of the husband and wife to the community property are equal, the only difference being, that during the continuation of the marriage relation, the husband, as the head of the family, has the management, control and disposition of this property for their joint benefit. Wright *v.* Hays, 10 Tex., 130; Yancy *v.* Batte, 48 Tex., 46; Johnson *v.* Harrison, id. 257.

Although the importance of legislation, which would require the titles to community property to be taken and recorded in the joint names of both husband and wife, is often seriously forced upon our consideration as a necessity for the protection of parties who purchase such property, yet, under the law as it now is, the legal effect of the deed to the husband alone to community property, is to make it a deed to the community itself; and as the wife, in the event of desertion by the husband, has the power, in certain contingencies, to sell community property, a subsequent purchaser from the husband must at his peril take notice of a prior recorded deed from the wife.

This would be analogous to the case of a conveyance by the heirs, though their title by descent is not upon the record; such conveyance, if *bona fide*, being held superior to a prior unrecorded conveyance from the ancestor, where there was not

actual notice.   Taylor *v.* Harrison, 47 Tex., 459; Wade on Notice, §§ 217–222.

Upon the assumption, then, that Elizabeth Thompson was the wife of Singleton J. Thompson, and that the land in controversy was their community property, there was no error in the above charge as given and in refusing the one asked.

It is also assigned as error, that the court, on defendant's application, charged the jury, " that if Thompson and Elizabeth Crawford lived together as man and wife, and by virtue of such cohabitation got the certificate which they traded for the land in controversy, then, whether they were really married or not, the land was their community property, and on his abandoning her without cause and leaving nothing to support her, she would have the right to sell the property for her support."

The question whether Elizabeth Thompson was the wife of Singleton J. Thompson, was one of the contested issues in the case, in regard to which the testimony was quite conflicting, and upon the affirmation of which, it was assumed that she had the power to make the sale to Taylor.

This charge virtually withdrew this issue from the jury, as they were instructed that she had this power of sale whether or not she was the lawful wife of Singleton J. Thompson.

In this we think there was error for which the judgment must be reversed.

If the certificate for a league and labor of land was issued to Singleton J. Thompson, because he was living with Elizabeth Thompson as a married man and the head of a family, when, in fact, they were not married, then the question whether Elizabeth Thompson would not be entitled to one-half the certificate or its proceeds, in the nature of a joint acquisition as a partner, is not so presented as to require of us an opinion.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 4, 1880.]