St. Louis Southwestern Railway Co. of Texas v. Annie Griffith.

### No. 1382.

**1.  Parties—Married Woman Suing Alone—Abandonment.**

Where the wife has, without fault upon her part, been abandoned by the husband for nearly a year, and the separation seems to be permanent and she is left without means of support, she may maintain an action in her own name for damages for a personal injury to herself.

**2.  Railway Company—Liability for Assault by Its Agent Upon a Passenger.**

Plaintiff, holding a valid ticket over the line of defendant railway company, was taken to its depot by transfer from a connecting line about ten hours in advance of the time when defendant's train upon which she was traveling would leave that night. The depot remained open at all hours, and with the assent of the depot agent she remained there awaiting the train, and after night was assaulted by the night agent of defendant while waiting for the train. Held, that defendant owed the plaintiff as a passenger the duty of protection, and was liable in damages for such assault.

APPEAL from Franklin. Tried below before Hon. John L. Sheppard.

*Todd & Rodgers* and *Sam H. West,* for appellant.

*Long & Long, Jeff D. McLean,* and *Hiram Glass,* for appellees.—1. Where a wife is permanently abandoned by her husband, she has the right to control the community property and the right to sue for its recovery, and especially is this the case where she has no separate property sufficient for her support. Ezell v. Dodson, 60 Texas, 331; Wright v. Hayes, 10 Texas, 130; Cheek v. Bellows, 17 Texas, 613; Fullerton v. Doyle, 18 Texas, 4; Davis v. Saladee, 57 Texas, 326; Harris v. Williams, 44 Texas, 124; Zimpleman v. Robb, 53 Texas, 281; Platte on Property Rights of Married Women, sec. 37.

2.  Railroad companies in this State are bound to receive passengers coming to them from a connecting line of railroad, and there is no fixed time for receiving them, and if received at all, the company receiving them owes them all the obligations due from carrier to passenger while they are in the depot for the purpose of continuing their journey. Rev. Stats., arts. 4251, 4252; 2 Am. & Eng. Encycl. Law, 739, 744, 745.

3.  The carrier is liable for every conceivable wrongful act done to a passenger by its train hands or other employes while they are engaged in transporting him, no matter how willful and malicious the act may be, or how plainly may be apparent from its nature that it could not have been done in furtherance of the carrier's business. The rule limiting the responsibility of the master to acts of his servants done within the scope of the servant's employment, does not apply to the relations between common carriers and passengers. Taylor, Private Corp. (2 ed.), 300; Stewart v. Railway, 90 N. Y., 588; Pendleton v. Kinsley, 3 Cliff., 416; Goddard v. Railway, 57 Me., 202; Bryant v. Rich, 106 Mass., 180; Railway v. Flexman, 103 Ill., 546; Hanson v. Railway, 62 Me., 84;

Craker v. Railway, 36 Wis., 657; Railway v. Young, 21 Ohio St., 518; Railway v. Rogers, 38 Ind., 116; Railway v. Anthony, 43 Ind., 183; Railway v. Fitzgerald, 47 Ind., 79.

FINLEY, ASSOCIATE JUSTICE.—This is a suit for the recovery of damages, instituted by Annie Griffith against the St. Louis Southwestern Railway Company of Texas, based upon an indecent assault committed upon her by appellant's night agent at its depot in Greenville. The petition shows the plaintiff to be a married woman, and that her husband had permanently abandoned her, leaving her without means of support. Appellant pleaded, (1) in abatement, that appellee was a married woman and not entitled to sue alone; (2) general and special demurrers; (3) general denial; (4) special pleas of coverture; that appellee was not a passenger nor entitled to protection as such at the time of the alleged injury; that the acts and injuries complained of constituted a wanton and personal tort by the employe, committed without the scope of his duty and not in course of his employment, and were never ratified, but expressly repudiated by appellant. Appellant also plead the statute of limitation.

On trial before the court, without a jury, the court overruled the plea in abatement and demurrers, and rendered judgment on the merits for appellee for $2500; and from this judgment the railway company has appealed.

The trial judge filed conclusions of fact and law. Upon the issue as to plaintiff's right to sue, he found these facts:

"1. I find as a matter of fact that the plaintiff, Annie Griffith, at the date of the alleged injury complained of in her petition, and at the time this suit was instituted, was a married woman, but that before the date of such injury, some ten or twelve months, her husband had abandoned her as his wife, and that at said time she was living separate and apart from him, and at the time this suit was instituted she did not know where her husband's residence was."

Upon the plea in abatement the evidence shows that Annie Griffith is a married woman, that she was married to James A. Griffith in 1888, she being then fifteen or sixteen years old, and he twenty years old; that after the marriage they lived together one year at the house of plaintiff's father; that they then moved to Commerce, where they lived some time, and afterward went to Ardmore, Indian Territory, where they lived in a small house built and owned by Jas. A. Griffith; that they sold said house and moved back to his father's; that from there they moved into a rented house at Norman, Indian Territory, where they were living in July, 1892; that about July 1, 1892, plaintiff, with her husband's consent, went to Ardmore to visit her parents; that a short time afterward said Jas. A. Griffith went to Ardmore and visited her a week or two, but did not live with her there as his wife; that he went from there to Fort Worth, Texas, to look for a house, and was gone some two months, during which time they corresponded with each

other; that he did not get a home, but came back to Ardmore and stayed a day or two; that he then asked plaintiff to return with him to Texas, and she said she would go with him anywhere except to live with his parents, which she was unwilling to do because they had mistreated her; that he left, saying that he would get a home near Sherman, Texas, and send for her; that she packed up her things and kept them packed, and went to the postoffice twice a day for a month, but got no letter from him, and he did not come back and never contributed a cent more to her support thereafter; that she then supposed he had then left her for good, and about ten or twelve months thereafter she went to Mt. Vernon to make her home with her married sister living near there. It was on this trip the injury complained of occurred, at Greenville. After leaving Greenville for Mt. Vernon she accidentally met her husband on the train and rode with him about six miles; that she then told him she would live with him anywhere under the sun except at his parents' house. He did not say where he lived or what he would do; she told him that she had had trouble at Greenville, but he did not ask her anything about it and she did not tell him what occurred. He gave her no money, but gave the baby a dime, and ten cents' worth of candy. He got off the train at a small station, and she went on to Mt. Vernon, and brought this suit by the advice of her brother-in-law. That at the time Jas. A. Griffith parted with plaintiff at Ardmore the last time, in the fall of 1892, he promised to write to her, but did not at that time intend to do so, but intended to permanently abandon her, never intending to live with her again, and never after that time contributed anything to plaintiff's support, and never intended to; that at the time plaintiff met Jas. A. Griffith at Commerce, she asked him where he lived and he refused to tell; and when she told him that she had had trouble at Greenville, he did not ask her anything, made no reply, and acted so indifferently that plaintiff did not tell him what the trouble was.

The evidence clearly showed a permanent abandonment of the wife by the husband, without fault on her part, and she was left without any means of support whatever.

Upon the merits of the case these facts were found by the court:

"2. I find that on or about June 27, 1893, the plaintiff left Ardmore, Indian Territory, where her parents then resided, to go to Mt. Vernon, Franklin County, Texas, for the purpose of living with one of her married sisters, who then lived in said Franklin County, and that at Gainesville, Cook County, Texas, she bought and paid for a through coupon ticket, via Sherman and Bells, via the Missouri, Kansas and Texas Railway, to Mt. Vernon, Franklin County, Texas. That said ticket was valid, and was thereafter duly honored and accepted by the defendant, and plaintiff was transported from said Gainesville to said Mt. Vernon by the defendant on said ticket, as a passenger on one of its passenger trains. That the plaintiff, on said June 27th, arrived at Greenville, on the Missouri, Kansas and Texas Railway, under her contract as a passen-

ger on said ticket, and attached to said ticket was a transfer ticket, or coupon, which the plaintiff had purchased and paid for at Gainesville, from the Missouri, Kansas and Texas depot to the depot of the defendant; that said depots were about one mile apart; that as soon as plaintiff reached Greenville, the conductor of the train of the Missouri, Kansas and Texas Railway, on which plaintiff was a passenger, showed her the transfer line or bus that her ticket called for, on which she was to be transferred from the Missouri, Kansas and Texas depot to the defendant's depot. That the manager of said transfer line accepted her as a passenger, and she gave him her said transfer ticket, and he accepted it, and promised to carry plaintiff to a hotel to wait until defendant's next regular passenger train left Greenville for Mt. Vernon, it being then about 2 o'clock p. m., and the time for defendant's first passenger train thereafter to leave Greenville for Mt. Vernon being 12 o'clock that night. That the manager of said transfer line did not carry plaintiff to a hotel, but did carry her direct to the depot of the defendant, and delivered her to the defendant at its depot in Greenville.

"That plaintiff had no money, and with her was her babe, which was about one year old, and she was a stranger and did not know the distance nor the location of the hotels and boarding houses at Greenville from the defendant's depot. That she inquired and was told that it was a mile from said depot to the nearest hotel or boarding house, and the court finds as a fact, that said depot was a mile from a boarding house or hotel, and that there were no private residences near said depot. That the plaintiff entered the sitting room of defendant's depot at the time the manager of said transfer line delivered her at said depot, for the purpose and with the intention of remaining until defendant's first passenger train thereafter left said depot for Mt. Vernon. That the defendant's station agent, Mr. J. D. Bone, at said place, saw the plaintiff when she was delivered at said depot by the transfer line, and saw her enter the sitting room, and he asked her if she had not better go to the hotel and stay until the train on which she expected to take passage arrived, and plaintiff replied she would remain where she then was in the sitting room, to which said agent consented, or made no objection. That about 9:30 o'clock p. m., Mr. Callahan, the night agent of the defendant, in charge of said depot, entered the sitting room where plaintiff was, turned down the light in said room, and placed his arm around plaintiff, tried to kiss her over her earnest protest, and made improper proposals to plaintiff. There was no one at the depot except said agent, the plaintiff and her babe; the plaintiff begged and pleaded with the agent to desist and not molest her; told him that she was a lady, and finally he went back into his office, and the plaintiff immediately took off her shoes and took her child in her arms and with as little noise as possible, slipped out of said sitting room and went to the residence of a citizen of Greenville, and gave the alarm of the outrage perpetrated upon her, and the city officers were notified of it, and the defendant's agent was arrested, and as soon as the company was notified of said

agent's conduct he was immediately discharged, and has never been in the employment of the defendant since. That the conduct of said agent frightened and humiliated said plaintiff in the extreme. The plaintiff was at that time and is now a lady of refined feelings and sensibilities; that said fright prostrated the plaintiff and greatly injured her nervous system, perhaps permanently; her health at said time and before was good, since that time and immediately afterward her health became bad, and she suffered and is suffering from hysteria. The plaintiff stayed in Greenville until the next day, and then went to Mt. Vernon on one of defendant's passenger trains, and the defendant accepted from plaintiff said ticket she purchased at Gainesville in payment of her fare from Greenville to Mt. Vernon.

"That when plaintiff reached Greenville, she was transferred to the depot of defendant, and was told by Mr. Bone, the agent, about dark, that she could remain in the sitting room of the depot till train time; that plaintiff missed the train that night, but next day traveled to Mt. Vernon on the remainder of said ticket, after giving a part to the Missouri, Kansas and Texas Railway Co., and the coupon to the transfer man at Greenville.

"That the ticket purchased by plaintiff upon which she was traveling as a passenger was a coupon ticket issued by the Missouri, Kansas and Texas Railway Co. at Gainesville, containing coupons as follows: (1) over the Missouri, Kansas and Texas Railway Co. from Gainesville to Greenville; (2) Frank Brame Transfer Co. coupon from depot of Missouri, Kansas and Texas Railway Co. to depot of St. Louis Southwestern Railway Co.; (3) coupon of St. Louis Southwestern Railway Co. from Greenville to Mt. Vernon. That said ticket contained the following, among other provisions, printed thereon: 'In consideration of the reduced rates at which this ticket is sold, the holder thereof agrees to and with the several companies over whose lines this ticket entitles him to be carried, as follows, to-wit: 1. That in selling this ticket the Missouri, Kansas and Texas Railway Co. acts only as agent, and is not responsible beyond its own line.' "

We find further that the evidence showed Greenville to be a competing point for the transportation of passengers, and that appellant kept its depot open night and day for the accommodation of persons desiring to take passage upon its trains, and that its passengers would frequently go to the depot in the day time and await the departure of its trains at 12 o'clock at night. Agents were kept in charge of the depot both day and night, and passengers were received in the depot without regard to the length of time before the departure of trains. The facts above recited were proven upon the trial.

*Conclusions of Law.*—The first proposition urged by appellant is, that under the facts of this case appellee has not the right to prosecute this suit without being joined by the husband.

The wife had been abandoned by the husband for nearly a year; she

was left without any means of support; the separation was without her fault, and was permanent. This state of facts clearly gave her the right to sue alone. Ezell v. Davidson, 60 Texas, 331; Davis v. Saladee, 57 Texas, 326; Zimpleman v. Robb, 53 Texas, 281; Harris v. Williams, 44 Texas, 124; Wright v. Hayes, 10 Texas, 130; Cheek v. Bellows, 17 Texas, 613; Fullerton v. Doyle, 18 Texas, 4.

Appellant further insists that appellee, at the time the assault was made upon her by appellant's agent, was a mere licensee, and that appellant did not owe her the duty of protection. It is admitted that if she was then a passenger, the appellant would be liable.

She had purchased her ticket, and the railroad company had contracted with her to safely transport her from Greenville to Mt. Vernon; she went to the depot with the purpose of taking passage upon the first train; was received in the depot and by the express assent of the company, through its agents, remained in the depot to await the departure of the train; the railway company's agents having full knowledge of the fact that she had a ticket for passage, and of her intention to await in the depot the departure of the train to take passage upon it. This course of treatment of persons intending to take passage upon appellant's trains was usual, and this was not a special and exceptional accommodation accorded this lady by the agent, which could be said to be without the authority of the company and out of the line of the agent's duty.

It may be, as contended by appellant, that the company was not compelled to open its depot to receive passengers so long a time in advance of the departure of its trains; but for reasons, presumably to its own advantage, it chose to receive passengers in that way, and having so received the plaintiff, it certainly can not be said that it owed her no duty of protection. If it owed her any duty of protection, it was grossly violated.

We are of opinion that the relation of carrier and passenger existed, and that the company is liable for the violation of its duty by its agents. Hutch. on Carriers, secs. 556, 557, 557a; Dillingham v. Russell, 73 Texas, 50; Croker v. Railway, 36 Wis., 657.

Appellant claims that the amount of damages awarded is excessive. We can not agree to this proposition. Actual damages alone have been awarded, and we can not say that the amount is in excess of the injury inflicted.

Judgment affirmed.

*Affirmed.*

Delivered February 29, 1896.

Writ of error refused.