## ATKINSON v. DIXIE GREYHOUND LINES, Inc., et al.
### No. 9929.

Circuit Court of Appeals, Fifth Circuit.
Jan. 29, 1942.

Ross R. Barnett, of Jackson, Miss., for appellant.

W. H. Watkins, Sr., of Jackson, Miss., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Lamar C. Atkinson brought suit jointly against Dixie Greyhound Lines, Inc., and Teche Lines, Incorporated, for wrongfully causing his seizure, arrest and imprisonment. The case was tried to a jury, and at the close of the evidence for the plaintiff the court granted the defendants' motion for a directed verdict, and entered judgment accordingly.

In January, 1940, Dixie Greyhound Lines, Inc., and Teche Lines, Incorporated, operated passenger busses running to and from Jackson, Mississippi, on regular schedules. The two companies maintained and used the same terminal depot in Jackson, and used the same ticket agent, the same telephone, and other jointly maintained conveniences.

Atkinson was employed in a grocery store in the City of Jackson. He and his family lived approximately seven miles south of the city, and each day when his work was over he usually went to the bus depot and boarded the 8:15 bus for his home. He testified that he had been riding to his home on the bus almost every night for three months; that on January 27, 1940, he worked at the store from seven

in the morning until eleven-thirty that night; that after closing the store, he took a bag of groceries which he had purchased and went to the coffee shop of a downtown hotel to eat supper; that he ate supper and then walked from the hotel to the bus station, arriving there about 1:15 A. M.; that he was not sure when the next bus left, but was under the impression that he could get a bus about 1:45 A.M.; that when he arrived at the station, he went directly to the ticket office; that he had the bag of groceries in one hand, and put his other hand in his pocket and drew out a one dollar bill with which to purchase his ticket; and that the agent on duty was busy writing. Atkinson inquired of the ticket agent, "What time does the bus go?" The agent glanced up and said, "You have plenty of time. You have until 4:30." Appellant waited a short time, and as the agent kept writing he walked over and sat in one of the seats provided for waiting passengers. The waiting room contained more than fifty seats, and many of them were vacant at the time. Later on, Atkinson went upstairs to the balcony for the purpose of going to the men's lavatory. When he came out of the lavatory, he sat in one of the seats provided there for passengers.

Atkinson further testified that about two o'clock, and while he was sitting in one of the seats on the balcony, the ticket agent "comes by there and asks me what I was doing, what direction I was going in. I told him I was going south to Byron, and he asked me did I have a ticket. I said. 'No, I haven't got a ticket but I am ready to get one now.' He said, 'Well, you have until 4:30 in the morning to get it. The bus leaves at 4:30 in the morning. That is the next bus going south.' When he told me that, he turned away and just left me with the impression that I had until 4:30 the next morning to get my ticket."

About three o'clock in the morning two uniformed police officers came upstairs and began talking to a passenger who sat near Atkinson. The ticket agent came up and informed the officers that they were talking to the wrong man, and he then pointed to Atkinson and said that he was the one who had been loafing at the depot for about a week. The officers approached Atkinson and questioned him. Atkinson stood up, and as he attempted to pick up his sack of groceries, one of the officers seized him and the other officer searched him.

He was told that he was under arrest, and the officers then led him down the stairs, through the waiting room, and ejected him from the station. After removing him from the station, the officers placed him in a car and took him to police headquarters. When Atkinson arrived at the police station. the two officers and the Desk Sergeant questioned him for several minutes. He was then placed in an adjoining room and held for two hours, and was released when an officer who knew him came in and identified him. Appellant then took his bag of groceries and walked back through the cold and the snow to the bus terminal. He found that the 4:30 bus had gone, and he then had to wait until about nine o'clock that morning when he caught another bus and went home to his family.

The evidence is without dispute that the ticket agent called police headquarters and requested officers to come to the depot and eject the appellant. The ticket agent testified:

"Q. I believe you testified, did you not, that you had positive instructions from your employer that people should not stay in the depot with no obvious reason to be there at the station? A. That is right.

"Q. So it was discretionary with you as to whether or not you should call police headquarters and ask for assistance? A. Yes, sir.

"Q. To put people out? A. Yes, sir.

"Q. In other words, that was part of your duty as employe of the companies to see that people are put out when you think they are violating some city ordinance or some law? A. When there is just reason.

"Q. The officials of the company authorize you to do that? A. Yes, sir.

"Q. That is what you were doing on the occasion you called police headquarters to come to the depot and take charge of Lamar Atkinson? A. Yes, sir."

When the seizure and arrest of appellant was made at three o'clock in the morning, the night was intensely cold, with ice and snow covering the ground. It is clear that while Atkinson was in the depot, he was sober, and was deporting himself in a quiet and peaceful manner, and that this conduct obtained until he was placed under arrest and removed from the station. Several persons were in the depot and saw the officers eject the appellant, and he

testified that after his arrest he was questioned about the occurrence by a number of people; that he did not mention his having been arrested and put out of the station until he was asked about it by different persons; that when he applied for work he was asked if he had ever been arrested; that he was humiliated; that he had never loafed about the depot of the defendant bus lines; and that he had never been arrested until this time.

■■ The trial court erred in holding that as a matter of law the relationship of carrier and passenger did not exist between Atkinson and the defendant bus companies. Railroad and bus depots are established and maintained for the accommodation of passengers, and when an intending passenger avails himself of the convenience and presents himself in a proper manner and within a reasonable time before the arrival of his bus or train, "such person, while on the depot grounds or in the waiting room, is a passenger, and entitled to all the protection of a passenger." Metcalf v. Y. & M. V. R. R. Co., 97 Miss. 455, 52 So. 355, 356, 28 L.R.A.,N.S., 311. Whether the passenger-carrier relationship exists, depends, not upon the purchase of a ticket, but upon all the facts and circumstances of the particular case. 10 C.J., Carriers, §§ 1039, 1040–1042; 13 C.J.S., Carriers, §§ 554, et seq.; Thomas v. Bush, Mo.App., 200 S.W. 301; Kidwell v. Chesapeake & O. Ry. Co., 71 W.Va. 664, 77 S.E. 285, 43 L.R.A.,N.S., 999.

■ Viewing the evidence, as we must, in the light most favorable to the appellant, it is clear that Atkinson presented himself at the station in a proper manner; that he approached the ticket agent with money in his hand to buy a ticket; that the agent told him the bus didn't leave until 4:30 A. M.; that he took this statement of the agent to mean that he could remain at the depot until that time; and that upon being questioned by the agent at a later time he expressed a willingness to buy a ticket, and the agent told him he had until 4:30 to get one. Cf. St. Louis Southwestern R. R. Co. v. Griffith, 12 Tex.Civ.App. 631, 35 S.W. 741. It was for the jury to weigh the evidence and ascertain whether Atkinson was a passenger, whether he had presented himself in a proper and reasonable manner, and whether he was entitled to sit in the

bus depot and wait for the bus. The testimony clearly made a case for the jury, and the court erred in directing a verdict for the defendants.

■ The appellee contends that from the evidence in the case it is apparent that the plaintiff could not have expected to recover as much as $3,000, and that, therefore, the federal court is without jurisdiction. The sum claimed in the pleadings of the appellant is far in excess of the minimum jurisdictional amount, and it does not appear that his claim was colorable or otherwise made in bad faith. The requirements as to jurisdiction were met. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.