## HREBRIK *v.* CARR.[1]

*(District Court, E. D. New York. July 2, 1886.)*

1. CARRIERS—OF PASSENGERS—FALL FROM GANG-PLANK OF STEAMER—GANGWAY WITHOUT ROPES OR BATTENS—VESSEL'S LIABILITY FOR LOSS OF LIFE.

   Libelant's husband, a passenger on the steam-ship Australia, while returning to the wharf from the steamer prior to her departure, fell from the gang-plank, and was drowned. The evidence indicated that the gangway was a single narrow plank, without battens or ropes. Suit being brought by libelant under the statute of the state of New York to recover $5,000 for the death of her husband, *held*, that the owners of the steam-ship were negligent in not maintaining a safer gang-plank, and libelant was entitled to recover the amount of the damage, which was fixed at $2,500.

2. SAME—RIGHT OF PASSENGER TO RETURN FROM VESSEL TO PIER—DUTY OF VESSEL TO PROVIDE SAFE MEANS OF PASSAGE.

   A passenger on board a vessel, before her departure from the wharf, has the right to go ashore even to buy tobacco, and it is the vessel's duty to provide a safe means of passage from the steamer to the pier.

In Admiralty.

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

*Alexander Cameron,* for libelant.
*Ullo, Ruebsamen & Hubbe,* for claimant.

BENEDICT, J.   The libelant's action is to recover of the owner of
the steam-ship Australia for the death of her husband, who, while
passing from the steamer to the pier, fell from the gang-plank, and
was drowned.   The decedent and the libelant, then husband and
wife, had taken passage in that steamer, and, in pursuance of notice
that she would sail early in the morning, went on board her the even-
ing before.   After they had been on board some little time the hus-
band left the wife to go ashore, as she says, to buy some tobacco.
While passing down the plank from the gangway to the pier he fell
off the plank into the water, sank, and never rose again.   She now
brings this action, by virtue of a statute of the state of New York, to
recover $5,000 of the defendant, upon the ground that the gang-
plank provided as a means of egress from the steamer to the pier
formed an improper and unsafe passage-way.

The case presents, at the outset, an issue as to the character of
the gang-plank from which the decedent fell.   The libelant asserts
that it was a single narrow plank, laid from the gangway to the pier,
without battens or ropes.   The defendant has called witnesses who
say that the passage-way from the gangway to the pier was formed
by placing a cargo-skid, six feet wide, from the steamer to the pier,
and upon this a proper gang-plank, two or three feet wide, with bat-
tens on it, and having on one side a rope fastened to iron stanchions
four feet high.   Upon this question my conclusion is that no such pas-
sage-way as is described by the defendant's witnesses was in position
at the gangway at the time the decedent fell.   The testimony of the
libelant, whose appearance and manner is in her favor, and who,
with her husband, passed up the passage when she went on board
the steamer, is positive to the effect that the passage was a single
narrow plank; and she is greatly confirmed by the testimony of dis-
interested persons, who saw and measured the single plank found
leading from the gangway, the next day after the accident.   It is in-
credible that those in charge of the steamer, after a man had been
drowned by falling off the gang-plank, and before the arrival of these
witnesses the next day, removed a proper gang-plank, such as the
officers of the steamer say was there, and placed in its stead the
single plank found there when the libelant's witnesses visited the
steamer.   Such a gang-plank as the defendant's witnesses describe,
upon a cargo-skid, may have been there at some time.   At the time
of the accident the taking of cargo on that side of the ship had been
finished, and the last of the cargo was coming in on the other side,
and such a passage-way as the defendant's witnesses describe may
have been in position when the decedent fell, while the ship was
working on that side.   If so, it had been removed when the work on
that side of the ship was finished.

. What has been said disposes of another issue of fact made in the case by the assertion on the part of the defendants that the decedent was intoxicated; for the witnesses who testify to the intoxication are those whose testimony as to the cargo-skid I have felt obliged to reject.

The next question is one of law. In behalf of the defendant, it is said that if the decedent, as his wife says, attempted to go ashore to get tobacco, he placed himself outside his contract as a passenger, and the defendant was under no obligation to provide him a means of egress from the steamer for such a purpose. To this I cannot assent. In my opinion, the decedent, when on board as a passenger, had the right to go ashore when he did, and it was the duty of the defendant to provide a safe means of passage from the steamer to the pier. The necessity on the part of a passenger, who has taken his position as a passenger, to return to the pier is a common incident of travel. It is constantly done to find lost baggage, to speak to a friend, and may be done to purchase tobacco by any one addicted to the use of that weed. From this necessity arises the obligation on the part of the ship to keep and maintain for the passenger's use, at all proper times, a safe passage-way from the steamer to the pier. This duty was not in this instance discharged, and for that reason the defendant is liable in damages, which damages the libelant, by virtue of the statute of the state of New York, is entitled to recover. As to the amount of such damages, I am of the opinion that $2,500 will be proper. For that sum, with costs, the libelant may have a decree.