Argued 28 March, decided 22 May, rehearing denied 28 August, 1905.

**ABBOT v. OREGON RAILROAD CO.**

80 Pac. 1012, 1 L. R. A. (N. S.) 851, 39 Am. & Eng. R. Cas. (N. S.) 52.

CARRIERS—DUTY TO LIGHT STATIONS AND PLATFORMS.

1. A carrier of passengers by rail is bound to exercise reasonable care to keep its platforms, approaches and station grounds, so far as passengers would naturally resort to them, properly lighted at night for a reasonable time, as determined by the circumstances of the case, the size and importance of the station, and the business done there, next prior to the arrival and immediately following the departure of a passenger train scheduled to stop at the station during the night.

PASSENGER AT STATION—RELATION OF TO CARRIER.

2. A passenger who has completed his journey and alighted from the train at the station is allowed a reasonable time to leave the premises, and an intending passenger may occupy the depot waiting room a reasonable time immediately preceding the arrival of his train, during which he occupies a relation towards the carrier analogous to that of a passenger.

---

NOTE.—As to the Duty of Carriers to Keep Stations and Platforms Lighted and in Safe Condition, see notes in 3 L. R. A. 75; 6 L. R. A. 193; 20 L. R. A. 520; 57 L. R. A. 390; 16 Am. St. Rep. 325; 42 Am. St. Rep. 522; 90 Am. St. Rep. 818; 101 Am. St. Rep. 390; and 39 Am. & Eng. R. Cas. (N. S.) 52. See, also, note in 1 L. R. A. (N. S.) 851, discussing "What Is a Reasonable Time Prior to the Arrival or Departure of Trains to Keep a Station Open, Lighted and Heated."

As to the Duty of a Carrier to Maintain Safe Approaches Beyond Its Own Premises, see note in 16 L. R. A. 593.

REPORTER.

DUTY TO PERSON PERMITTED TO REMAIN IN STATION OR CAR.

3. A carrier owes to one whom it permits to remain in and about its station while waiting for a train not due for some time the same protection and care that is due a passenger, and the same duty exists toward one allowed to remain in a car after arriving at the destination of the train.

DUTY TO LIGHT STATION PLATFORM FOR SPECIAL PASSENGER.

4. The knowledge of a train dispatcher that passengers arriving on a special train over another road at night intend to take a train on his road, does not bind his road to light its depot platform until a reasonable time prior to the arrival of its train.

DUTY TO LIGHT STATION PLATFORM—QUESTION FOR JURY.

5. Whether a given period of time prior to the arrival of a night passenger train was a reasonable period during which the station platform should have been kept lighted is a question for the jury, being one of fact.

CARRIERS—RIGHT OF PASSENGER TO LEAVE AND RE-ENTER CONVEYANCE.

6. A passenger may leave the car or boat on which he is traveling to transact his private business at any intermediate station or landing where a stop is made for any reasonable time to receive or discharge passengers, and if he is injured without his fault, in consequence of the carrier's negligence on any part of the premises set apart by it for the use of the public, or so used with its consent, he may recover the damages sustained.

CARRIERS—RIGHT TO EXERCISE ON DARK PLATFORM—CONTRIBUTORY NEGLIGENCE.

7. A passenger, waiting at a station on a dark night for his train, who is permitted to remain in a well-lighted car provided with necessary conveniences, is guilty of contributory negligence where he leaves the car to walk on the unlighted station platform merely for exercise.

From Sherman: WILLIAM L. BRADSHAW, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by George Abbot against the Oregon Railroad & Navigation Co. and the Columbia Southern Railway Co. to recover damages for a personal injury alleged to have been sustained by plaintiff while a passenger of the defendant companies, and caused by their negligence in failing to maintain a railing at, and in omitting to keep a lamp burning on, a depot platform jointly used by them. The defendants, separately answering, denied the material allegations of the complaint, and for further defenses averred that plaintiff, at the time he was injured, was not a passenger of either company, and that his hurt was caused by his own want of care. The allegations of new matter in the answer having been denied in the replies, the cause was tried, and judgment rendered against the defendants, or either of them, for the sum of $20,000, and they severally appeal.          REVERSED.

For appellant Columbia Southern Ry. Co. there was an oral argument by *Mr. Zera Snow,* with a brief over the name of *Snow & McCamant,* to this effect.

I. The obligation of a carrier to keep its terminals safe for the reception of passengers is limited to a reasonable time before the arrival and after the departure of trains on which such passengers are to be carried: *Alabama G. S. R. Co.* v. *Arnold,* 84 Ala. 159 (5 Am. St. Rep. 354, 4 So. 359) ; *Johnson* v. *Boston & M. R. Co.* 125 Mass. 75; *Hodges* v. *New Hanover T. Co.* 107 N. C. 576 (12 S. E. 597) ; *Illinois Cent. R. Co.* v. *Laloge,* 113 Ky. 896 (62 L. R. A. 405, 69 S. W. 795).

II. Those who come to a railway station at other times, without business requiring them to come, are mere licensees, to whom the carrier owes no duty except to refrain from wantonly injuring them: *Pittsburg, Ft. W. & C. R. Co.* v. *Bingham,* 29 Ohio St. 364 (23 Am. Rep. 751) ; *Cincinnati, H. & D. R. Co.* v. *Aller,* 64 Ohio St. 183 (60 N. E. 205) ; *Gillis* v. *Pennsylvania R. Co.* 59 Pa. 129 (98 Am. Dec. 517) ; *Baltimore & O. R. Co.* v. *Schwindling,* 101 Pa. 258 (47 Am. Rep. 706) ; *Burbank* v. *Illinois Cent. R. Co.* 42 La. Ann. 1156 (11 L. R. A. 720, 8 So. 580) ; *Faris* v. *Hoberg,* 134 Ind. 269 (39 Am. St. Rep. 261, 33 N. E. 1028) ; *Woodruff* v. *Bowen,* 136 Ind. 431 (22 L. R. A. 198, 34 N. E. 1113) ; *Schmidt* v. *Bauer,* 80 Cal. 565 (5 L. R. A. 580, 22 Pac. 256) ; *Converse* v. *Walker,* 30 Hun, 596; *Larmore* v. *Crown Point Iron Co.* 101 N. Y. 391 (54 Am. Rep. 718, 4 N. E. 752) ; *Trask* v. *Shotwell,* 41 Minn. 66 (42 N. W. 699) ; *Heinlein* v. *Boston & Prov. R. Co.* 147 Mass. 136 (9 Am. St. Rep. 676, 16 N. E. 698) ; *Redigan* v. *Boston & M. R. Co.* 155 Mass. 44 (14 L. R. A. 276, 31 Am. St. Rep. 520, 28 N. E. 1133) ; *Dobbins* v. *Missouri, K. & T. R. Co.* 91 Tex. 60 (38 L. R. A. 573, 66 Am. St. Rep. 856, 41 S. W. 62) ; *Clark* v. *Howard,* 88 Fed. 199 (31 C. C. A. 454, 60 U. S. App. 32).

III. One who comes to a railway station as a passenger, and remains there longer than is reasonably necessary, or wanders about the platform for a purpose not related to his journey, thereupon becomes a mere licensee, in like manner as if his original entry had been unconnected with any business with the

carrier: *Heinlein* v. *Boston & P. R. Co.* 147 Mass. 136 (9 Am. St. Rep. 676, 16 N. E. 698) ; *Cincinnati, H. & D. R. Co.* v. *Aller,* 64 Ohio St. 183 (60 N. E. 205) ; *Imhoff* v. *Chicago & M. R. Co.* 20 Wis. 344; *Chicago, K. & W. R. Co.* v. *Frazier,* 55 Kan. 582 (40 Pac. 923).

IV. A party who wanders about on an elevated railway platform on a dark night, at a time when he is neither alighting from nor boarding a train, and who falls off the platform, is precluded from recovering by his own contributory negligence: *Massey* v. *Seller,* 45 Or. 267 (77 Pac. 397) ; *Missouri, K. & T. R. Co.* v. *Turley,* 85 Fed. 369 (29 C. C. A. 196, 56 U. S. App. 1) ; *Sturgis* v. *Detroit, H. G. & M. R. Co.* 72 Mich. 619 (40 N. W. 914) ; *Bedell* v. *Berkey,* 76 Mich. 438 (15 Am. St. Rep. 370, 43 N. W. 308) ; *Bradley* v. *Grand Trunk R. Co.* 107 Mich. 243 (65 N. W. 102) ; *Emery* v. *Chicago, M. & St. P. R. Co.* 77 Minn. 465 (80 N. W. 627) ; *Graham* v. *Pennsylvania Co.* 139 Pa. 149 (12 L. R. A. 293, 21 Atl. 151) ; *Reed* v. *Axtell,* 84 Va. 231 (4 S. E. 587) ; *Gulf, C. & S. F. R. Co.* v. *Hodges* (Tex. Civ. App.) 24 S. W. 563; *International & G. N. R. Co.* v. *Folliard,* 66 Tex. 603 (59 Am. Rep. 632, 1 S. W. 624) ; *Bennett* v. *New York, N. H. & H. R. Co.* 57 Conn. 422 (18 Atl. 668) ; *Hilsenbeck* v. *Guhring,* 131 N. Y. 674 (30 N. E. 580) ; *Forsythe* v. *Boston & A. R. Co.* 103 Mass. 510; *Louisville & N. R. Co.* v. *Ricketts,* 96 Ky. 44 (27 S. W. 860) ; *Wood* v. *Richmond & D. R. Co.* 100 Ala. 660 (13 So. 552) ; *St. Louis, I. M. & S. R. Co.* v. *Cox,* 60 Ark. 106 (29 S. W. 38) ; *Gunderman* v. *Missouri, K. & T. R. Co.* 58 Mo. App. 370; *Waterbury* v. *Chicago, M. & St. P. R. Co.* 104 Iowa, 32 (73 N. W. 341).

For appellant Oregon Railroad & Navigation Co. there was an oral argument by *Mr. William Wick Cotton,* with a brief over the names of *W. W. Cotton* and *H. F. Connor,* to this effect.

A. Plaintiff at the time of the injury was at most a licensee: *Johnson* v. *Boston & M. R. Co.* 125 Mass. 75; *Heinlein* v. *Boston & P. R. Co.* 147 Mass. 136 (9 Am. St. Rep. 676, 16 N. E. 698) ; *Georgia R. & Bkg. Co.* v. *Richmond,* 98 Ga. 495 (25 S. E. 565) ; *Brunswick & W. R. Co.* v. *Moore,* 101 Ga. 684 (28 S. E. 1000) ; *O'Donnell* v. *Chicago & N. W. R. Co.* 106 Ill. App. 287; *Illinois*

*Cent. R. Co.* v. *O'Keefe*, 168 Ill. 115 (39 L. R. A. 148, 61 Am.
St. Rep. 68, 48 N. E. 294) ; *Chicago & E. I. R. Co.* v. *Jennings*,
190 Ill. 478 (54 L. R. A. 827, 60 N. E. 818) ; *Bricker* v. *Phila-
delphia & R. R. Co.* 132 Pa. 1 (19 Am. St. Rep. 585, 18 Atl.
983) ; *Hasse* v. *Oregon R. & Nav. Co.* 19 Or. 354 (24 Pac. 238) ;
*Simmons* v. *Oregon R. & Nav. Co.* 41 Or. 151 (69 Pac. 440,
1022) ; *Pittsburg, Ft. W. & C. R. Co.* v. *Bingham,* 29 Ohio St.
364 (23 Am. Rep. 751).

B. No recovery can be had by a licensee for a mere omission;
there must be some positive act of misconduct: *Nicholson* v.
*Erie R. Co.* 41 N. Y. 525; *Splittorf* v. *State,* 108 N. Y. 205
(15 N. E. 322) ; *Cusick* v. *Adams,* 115 N. Y. 55 (12 Am. St.
Rep. 772, 21 N. E. 673) ; *Sterger* v. *Van Sicklen,* 132 N. Y.
499 16 L. R. A. 640, 28 Am. St. Rep. 594, 30 N. E. 987) ;
*Severy* v. *Nickerson,* 120 Mass. 306 (21 Am. Rep. 514) ; *Hein-
lein* v. *Boston & P. R. Co.* 147 Mass. 136 (9 Am. St. Rep. 676,
16 N. E. 698) ; *Reardon* v. *Thompson,* 149 Mass. 267 (21 N. E.
369) ; *Redigan* v. *Boston & M. R. Co.* 155 Mass. 44 (14 L. R. A.
276, 31 Am. St. Rep. 520, 28 N. E. 1133) ; *Sullivan* v. *Boston
& A. R. Co.* 156 Mass. 378 (31 N. E. 128) ; *Plummer* v. *Dill,*
156 Mass. 426 (32 Am. St. Rep. 463, 31 N. E. 128) ; *Blackstone*
v. *Chelmsford Foundry Co.* 170 Mass. 321 (49 N. E. 635) ;
*Hathaway* v. *New York, N. H. & H. R. Co.* 182 Mass. 286
(65 N. E. 387) ; *King* v. *Central R. Co.* 107 Ga. 754 (33 S. E.
839) ; *Post* v. *Texas & P. R. Co.* (Tex. Civ. App.) 23 S. W. 708;
*Woolwine* v. *Chesapeake & O. R. Co.* (*Manning* v. *Chesapeake
& O. R. Co.*) 36 W. Va. 329 (16 L. R. A. 271, 32 Am. St. Rep.
859, 15 S. E. 81) ; *Pittsburg, Ft. W. & C. R. Co.* v. *Bingham,*
29 Ohio St. 364 (23 Am. Rep. 751) ; *Sweeny* v. *Old Colony & N.
R. Co.* 10 Allen, 368 (87 Am. Dec. 644).

C. A railroad company is bound to exercise only reasonable
care to keep its premises in a safe condition: *Moreland* v. *Boston
& P. R. Corp.* 141 Mass. 31 (6 N. E. 225) ; *Batton* v. *South &
North Ala. R. Co.* 77 Ala. 591 (54 Am. Rep. 80) ; *Baltimore &
O. R. Co.* v. *Schwindling,* 101 Pa. 258 (47 Am. Rep. 706) ;
*Knight* v. *Portland, S. & P. Co.* 56 Me. 234 (96 Am. Dec. 449) ;
*Gunderman* v. *Missouri, K. & T. R. Co.* 58 Mo. App. 370 ;
1 Thompson, Negligence, p. 314.

D. A railroad company is under no obligation to keep its station platform lighted, except during a reasonable time before and after the departure or arrival of its trains: *Brunswick & W. R. Co.* v. *Moore,* 101 Ga. 684 (28 S. E. 1000) ; *Illinois C. R. Co.* v. *Laloge,* 113 Ky. 896 (62 L. R. A. 405, 69 S. W. 795) ; *Sargent* v. *St. Louis & S. F. R. Co.* 114 Mo. 348 (19 L. R. A. 460, 21 S. W. 823, 73 Am. Dec. 337) ; *Montgomery & E. R. Co.* v. *Thompson,* 77 Ala. 448 (54 Am. Rep. 72) ; *Alabama G. S. R. Co.* v. *Arnold,* 84 Ala. 159 (5 Am. St. Rep. 354, 4 So. 359) ; *Harris* v. *Stevens,* 31 Vt. 79; *Heinlein* v. *Boston & P. R. Co.* 147 Mass. 136 (9 Am. St. Rep. 676, 16 N. E. 698) ; *Grimes* v. *Pennsylvania Co.* 36 Fed. 72.

E. Even though plaintiff was a passenger, he should have exercised due care: *Finseth* v. *Suburban R. Co.* 32 Or. 1 (39 L. R. A. 517, 51 Pac. 84) ; *Sargent* v. *St. Louis & S. F. R. Co.* 114 Mo. 348 (19 L. R. A. 460, 21 S. W. 823) ; *Laffling* v. *Buffalo & S. W. R. Co.* 106 N. Y. 136 (60 Am. Rep. 433, 12 N. E. 599) ; *St. Louis, I. M. & S. R. Co.* v. *Cox,* 60 Ark. 106 (29 S. W. 38) ; *Waterbury* v. *Chicago, M. & St. P. R. Co.* 104 Iowa, 32 (73 N. W. 341) ; *Graham* v. *Pennsylvania Co.* 139 Pa. 149 (12 L. R. A. 293, 21 Atl. 151) ; *Baltimore & P. R. Co.* v. *Jones,* 95 U. S. 439 (24 L. Ed. 506).

F. Plaintiff's contributory negligence is a complete bar to his recovery: *Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250; *Eaton* v. *Oregon Ry. & Nav. Co.* 19 Or. 391 (24 Pac. 415) ; *Massey* v. *Seller,* 45 Or. 267 (77 Pac. 397) ; *Missouri, K. & T. Ry. Co.* v. *Turley,* 85 Fed. 369 (29 C. C. A. 196, 56 U. S. App. 1) ; *Baltimore & P. R. Co.* v. *Jones,* 95 U. S. 439 (24 L. Ed. 506) ; *Johnson* v. *Ramberg,* 49 Minn. 341 (51 N. W. 1043) ; *Emery* v. *Chicago, M. & St. P. R. Co.* 77 Minn. 465 (80 N.W. 627) ; *Sullivan* v. *Minneapolis, St. P. & S. S. M. R. Co.* 90 Minn. 390 (101 Am. St. Rep. 414, 97 N. W. 114) ; *Tanner* v. *Louisville & N. R. Co.* 60 Ala. 621; *Woodward Iron Co.* v. *Jones,* 80 Ala. 123; *Louisville & N. R. Co.* v. *Hall,* 87 Ala. 708 (4 L. R. A. 710, 13 Am. St. Rep. 84, 6 So. 277) ; *Chewning* v. *Ensley R. Co.* 100 Ala. 493 (14 So. 204) ; *Wood* v. *Richmond & D. R. Co.* 100 Ala. 660 (13 So. 552) ; *Louisville & N. R. Co.* v. *Ricketts,* 96 Ky. 44 (27 S. W. 860) ; *Splittorf* v. *State,* 108 N. Y. 205 (15 N. E. 322) ;

*Lafflin* v. *Buffalo & S. W. R. Co.* 106 N. Y. 136 (60 Am. Rep. 433, 12 N. E. 599) ; *Waterbury* v. *Chicago, M. & St. P. R. Co.* 104 Iowa, 32 (73 N. W. 341) ; *Forsyth* v. *Boston & A. R. Co.* 103 Mass. 510; *Bradley* v. *Grand Trunk R. Co.* 107 Mich. 243 (65 N. W. 102) ; *Bedell* v. *Berkey,* 76 Mich. 435 (15 Am. St. Rep. 370, 43 N. W. 308) ; *Graham* v. *Pennsylvania Co.* 139 Pa. 149 (12 L. R. A. 293, 21 Atl. 151) ; *International & G. N. R. Co.* v. *Folliard,* 66 Tex. 603 (59 Am. Rep. 632, 1 S. W. 624) ; *Gulf, C. & S. F. R. Co.* v. *Hodges* (Tex. Civ. App.), 24 S. W. 563; *Gunderman* v. *Missouri, K. & T. Ry. Co.* 58 Mo. App. 370; *Bennett* v. *New York, N. H. & H. R. Co.* 57 Conn. 422 (18 Atl. 668) ; *Toomey* v. *London B. & S. C. R. Co.* 3 C. B. N. S. 146; *Reed* v. *Axtell,* 84 Va. 231 (4 S. E. 587) ; *Pollich* v. *Sellers,* 42 La. Ann. 623 (7 So. 786) ; *Little Rock & Ft. S. R. Co.* v. *Cavenesse,* 48 Ark. 106 (2 S. W. 505) ; Beach, Contrib. Neg. (2 ed.), § 37.

For respondent there was an oral argument by *Mr. Alfred Silas Bennett,* with a brief over the name of *Bennett & Sinnot,* to this effect.

1. A common carrier is bound to use at least ordinary care in making its depots and platforms safe for passengers arriving at or about to depart from its stations: *Skottowe* v. *Oregon Short Line R. Co.* 22 Or. 430, 443 (16 L. R. A. 593, 10 Am. Neg. Cas. 44, 30 Pac. 222) ; *Bueneman* v. *Railroad Co.* 32 Minn. 390 (20 N. W. 379) ; *Louisville, N. A. & C. Ry. Co.* v. *Lucas,* 119 Ind. 583 (6 L. R. A. 193, 21 N. E. 968) ; *Moses* v. *Railway Co.* 39 La. Ann. 649 (4 Am. St. Rep. 231) ; Patterson, Railway Law, §§ 251 and 255; 3 Thompson, Negligence (2 ed.), § 3060; Hutchinson, Carriers, 417, 418; *Wallace* v. *Wilmington & D. R. Co.* 8 Houst. 529 (18 Atl. 818) ; *Seymour* v. *Railroad Co.* 3 Biss. 43.

2. A passenger is not compelled to remain in the coaches or even waiting rooms of a railroad company at stations along his journey, or at the depot of connecting lines. He has a right, on the contrary, to leave the car when it is stopped at a station or a waiting room, for the purpose of taking exercise, talking with his friends, attending to business, or any other proper purpose,

and in so doing he does not lose his character of passenger, or waive the exercise of ordinary care on the part of the railroad company in the matter of its stations and approaches: *Dice* v. *Willamette Transp. Co.* 8 Or. 60 (34 Am. Rep. 57, 6 Am. Neg. Cas. 202) ; *Hrebik* v. *Carr,* 29 Fed. 298; *Alabama G. S. Ry. Co.* v. *Coggins,* 88 Fed. 458 (32 C. C. A. 1) ; *Riley* v. *Railway Co.* 39 Ind. 568; *Louisville, N. A. & C. Ry. Co.* v. *Lucas,* 119 Ind. 583 (6 L. R. A. 193, 21 N. E. 968) ; *Louisville, N. A. & C. Ry. Co.* v. *Tredway,* 143 Ind. 475 (40 N. E. 807, 41 N. E. 794) ; *Knight* v. *Railway Co.* 56 Me. 234 (96 Am. Dec. 449) ; *Keefe* v. *Railway Co.* 142 Mass. 251; *Dodge* v. *Railway Co.* 148 Mass. 207 (19 N. E. 373) ; *Chicago, etc., Ry. Co.* v. *Woolbridge,* 32 Ill. App. 237 ; *Keokuk Co.* v. *True,* 82 Ill. 608; *St. Louis & S. F. Ry. Co.* v. *Coulson,* 8 Kan. App. 4 (54 Pac. 2) ; *Alabama G. S. Ry. Co.* v. *Arnold,* 84 Ala. 159 (4 So. 359, 5 Am. St. Rep. 354) ; *White* v. *Railway Co.* 89 Ky. 47 (12 S. W. 936) ; *Lemery* v. *Great Northern Ry. Co.* 83 Minn. 47 (85 N. W. 908) ; 1 Fetter, Carriers, § 234.

3. It is the duty of a railroad company and of two connecting companies jointly using a depot, to keep it safely lighted, as well as in a safe condition, for a reasonable time before and after the arrival and departure of its trains: *Wallace* v. *Wilmington & D. R. Co.* 8 Houst. 529 (18 Atl. 818) ; *Bueneman* v. *Railroad Co.* 32 Minn. 390 (20 N. W. 379) ; *Louisville, N. A. & C. Ry. Co.* v. *Lucas,* 119 Ind. 583 (21 N. E. 968, 6 L. R. A. 193).

4. What is a reasonable time in such a case is usually a question of fact for the jury and depends largely upon circumstances which surround the case: 3 Thompson, Negligence (2 ed.), § 2686, and authorities cited.

5. The court could not say as a matter of law that three hours was an unreasonable time for a passenger to remain at a station in the nighttime, when he came into a joint depot on one train and had made arrangements with both companies to go out at the end of that time on the other: *St. Louis S. W. Ry. Co.* v. *Griffith,* 12 Tex. Civ. App. 631 (35 S. W. 741) ; *Holcomb* v. *Railway Co.* 31 Am. & Eng. R. R. Cas. (N. S.) 482.

6. Whether a passenger at such a depot, or at any depot, had used ordinary care in walking carefully across the plat-

form, in the dark on a close, warm night, where he had been riding in a close, uncomfortable car for several hours, for the purpose of getting fresh air and taking exercise is a question for the jury: *Kentucky & I. Bridge Co.* v. *McKinney,* 9 Ind. App. 213 (36 N. E. 448); *Louisville, N. A. & C. Ry. Co.* v. *Tredway,* 143 Ind. 689 (40 N. E. 807, 41 N. E. 794); *Alabama G. S. Ry. Co.* v. *Arnold,* 84 Ala. 159 (4 So. 359); *Chicago, etc., Ry. Co.* v. *Woolbridge,* 32 Ill. App. 237; *Railway Co.* v. *Lawrence,* 96 Ill. App. 635; *Keokuk* v. *True,* 82 Ill. 608; *St. Louis & S. F. Ry. Co.* v. *Coulson,* 8 Kan. App. 4 (54 Pac. 2); *McCone* v. *Railway Co.* 51 Mich. 601; *McDonald* v. *Chicago & N. W. Ry. Co.* 26 Iowa, 124 (95 Am. Dec. 114); *Missouri Pac. Ry. Co.* v. *Neiswanger,* 41 Kan. 621 (21 Pac. 582, 13 Am. St. Rep. 304); *Union Pac. Ry. Co.* v. *Evans,* 52 Neb. 50 (71 N. W. 1062); *Bueneman* v. *Railroad Co.* 32 Minn. 390 (20 N. W. 379); *Weston* v. *Railroad Co.* 73 N. Y. 595; *Archer* v. *New York, N. H. & H. R. R. Co.* 106 N. Y. 589 (13 N. E. 318); *Railway Co.* v. *Brown,* 78 Tex. 397 (14 S. W. 1034); *Barker* v. *Railway Co.* 41 S. E. 148; 3 Thompson, Negligence (2 ed.), §§ 3058, 3061; *Seymour* v. *Railroad Co.* 3 Biss. 43.

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended by defendants' counsel that the testimony introduced by plaintiff conclusively shows that the injury of which he complains was caused by his contributory negligence, and hence the court erred in overruling their motions for judgments of nonsuit, based on that ground. The legal principle insisted upon necessitates an examination of the bill of exceptions, which shows that the Oregon Railroad & Navigation Co. is a corporation owning and operating a railroad from Portland east to Huntington, passing through the station of Biggs, situated on the south bank of the Columbia River. The Columbia Southern Railway Co. is also a corporation owning and operating a railroad from Biggs south to Shaniko. The depot and tracks at Biggs are owned by the former company, but the cost of maintaining the station is borne, and the tracks and premises connected therewith are jointly used, by both in receiving and discharging passengers. The station building is placed east and

west between parallel tracks, the Oregon Railroad & Navigation Co. using the lines of rails on the north side of the depot, and the other company those on the south. This building is surrounded by a plank platform 16 feet wide on the north, 12 on the south, and 14 on the east and west. The land on which the depot stands slopes to the south, so that the north edge of the platform is level with the tracks of the Oregon Railroad & Navigation Co., while the south edge is about five feet above the rails on that side, and the center of the west edge about six feet above the surface of the ground, which at that point is somewhat depressed. The Columbia Southern Railway Co., at the time of plaintiff's injury, was operating daily trains only, but the other company was running night passenger trains—No. 6, going east, passing through Biggs at 12:22 midnight, and No. 3, going west, at 3:30 a. m. These trains were not scheduled to stop at that station, which was closed at night, and no light maintained at the depot, the passengers being accommodated by the day trains of both companies which stopped at that junction.

The plaintiff is 59 years old, has traveled extensively by rail, is engaged in buying wool on commission, and had been at Biggs 11 times prior to his injury, passing in the daylight over a gang plank extending from the depot platform to the cars of the Columbia Southern Railway Co. With other buyers, he was at Shaniko June 27, 1903, attending a sale of wool, which was not concluded until evening. As these dealers could save a day's time if they could reach Biggs and take the night passenger trains of the Oregon Railroad & Navigation Co., they employed the other company to carry them by special train to that junction, the train dispatcher of the former company having telegraphed that its night passenger train would stop at Biggs if the special train reached there in time. The train so chartered left Shaniko at 8:40 p. m., and reached the junction at 12:15 that night, the car in which the wool dealers rode being left on the south side of the depot, and near the west end thereof. A few minutes thereafter train No. 6 stopped at the north side of the depot, and the passengers from Shaniko, who were going east, were escorted by a trainman of the Columbia Southern Railway Co., having a lantern, from its car, over the gang

plank and across the west end of the depot platform to the train of the other company. The plaintiff accompanied the departing passengers to their train, and immediately returned with the trainman to the car which he had left, intending to take passage for Portland when train No. 3 arrived. The car in which plaintiff was to wait was well lighted, and provided with a suitable toilet room. He sat down, and tried to slumber, but on the way from Shaniko the passengers had freely indulged in smoking, and he was unable to sleep. Being weary from the effects of his ride and fatigued from the strained position occasioned by sitting for several hours in an ordinary passenger car, he rose, left the coach, and again passed over the gang plank, intending to cross the tracks of the Oregon Railroad & Navigation Co. to seek refreshment in a cool breeze from the Columbia River, and also to urinate. Instead of going directly north, he turned to the west, and slowly walked in the darkness to the edge of the depot platform, which was not protected by a railing, and fell to the ground, sustaining such an injury that one of his legs had to be amputated below the knee. As a witness in his own behalf he testified on cross-examination that he had been at Biggs several times prior to June 28, 1903; that he knew the station platform was level with the car tracks on the north, but elevated on the south, requiring a gang plank, over which he had always passed in entering or leaving the coaches of the Columbia Southern Railway Co., but he had never particularly noticed the ground around the station; that he knew the platform did not extend indefinitely to the west; and, referring to the time when he was injured, he said, "It was the darkest night I ever saw."

In support of the judgment rendered it is asserted by his counsel that, as the defendants jointly maintain the depot at Biggs, each owes a duty to persons arriving on the cars of one company to take passage on those of the other to provide a reasonably safe platform, and to see that it is suitably lighted at night for a reasonable time before the arrival and after the departure of their trains, and for any neglect in these particulars they are jointly and severally liable for any damage resulting therefrom; that the Oregon Railroad & Navigation Co., having agreed to stop its train No. 3 at Biggs, on the night in question,

for the accommodation of persons coming on the special train from Shaniko and intending to go west over its line, thereby established the relation of carrier and passenger with such persons from the time of their arrival at the junction, and, neither company having lighted the depot or platform, plaintiff, who then was a passenger of both companies, and entitled to go on the platform for exercise and to secure pure air, had the right to assume from its dark condition that it was reasonably safe for his accommodation, but, having been dangerous by reason of the defendants' failure to maintain a railing or a light, he is entitled to recover from them the damages awarded by the jury, and hence no error was committed as alleged.

1. It will be remembered that the night passenger trains of the Oregon Railroad & Navigation Co. were not scheduled to stop at Biggs, and for that reason no light was maintained there. The plaintiff's right to recover compensation for the injury sustained depends upon the existence of some duty owed him by the defendants, or either of them, the breach of which was the proximate cause of his hurt: *Emry* v. *Roanoke Nav. Co.* 111 N. C. 94 (16 S. E. 18, 17 L. R. A. 699). The law imposes on a railway company engaged in carrying persons for hire the duty of exercising reasonable care in keeping its platforms, approaches thereto, and station grounds, so far as passengers would naturally resort to them, properly lighted at night for a reasonable time next prior to the arrival or immediately following the departure of a train which its time cards specify will stop at night to take on or put off passengers: 3 Thompson, Negligence, § 2691; 4 Elliott, Railways, § 1641; Hutchinson, Carriers (2 ed.), § 516; *Louisville, N. A. & C. Ry. Co.* v. *Lucas,* 119 Ind. 583 (21 N. E. 968, 6 L. R. A. 193); *Ohio & M. Ry. Co.* v. *Stansberry,* 132 Ind. 533 (32 N. E. 218). What constitutes a reasonable time during which such premises must be kept lighted is determined by the circumstances of each particular case, and depends upon the size and importance of the station and the number of persons who lawfully visit it at night for the purpose of transacting business with the railroad company: 3 Thompson, Negligence, § 2686; *Alabama G. S. Ry. Co.* v. *Arnold,* 84 Ala. 159 (4 So. 359, 5 Am. St. Rep. 354); *Louisville,*

*N. A. & C. Ry. Co.* v. *Treadway,* 143 Ind. 689 (40 N. E. 807, 41 N. E. 794).

2. A person who has completed his journey on a railroad train and alighted therefrom at a station provided for the accommodation of the general public is allowed a reasonable time to leave the premises; and one who lawfully intends to secure passage on the cars is permitted to occupy the waiting room of a depot a reasonable time immediately preceding the arrival of a train which he expects to take, during which such person sustains towards the carrier a relation analogous to that of a passenger, to whom the railway company owes a duty commensurate with the degree of danger to which such person may be exposed: 4 Elliott, Railways, § 1592; 2 Wood, Railways (Minor's ed.), § 310. In *Heinlein* v. *Boston & Prov. Ry. Co.* 147 Mass. 136 (16 N. E. 698, 9 Am. St. Rep. 676), it was held that a person remaining at a station three or four minutes after he knows that the train which he desired to take had already gone, when there was nothing to detain him except his wish to take a street car which would soon arrive at such station, ceases to have the rights of an intending passenger, and cannot recover for injuries sustained by him in attempting to leave the station by reason of the station door being closed, the station lights extinguished, and the passage by which he endeavored to depart insufficiently illuminated. In *Quantz* v. *Southern Ry. Co.* (N. C.) 49 S. E. 79, a person having arrived at night on a train at his destination left the station grounds, but, returning in a few minutes to the depot on business of his own, walked into an open doorway, and, falling, was injured, and it was ruled that he had ceased to be a passenger, and was only a licensee, to whom the railroad company did not owe the duty of keeping the door closed, but only of maintaining a way that was free from danger. In *Missouri Pac. Ry. Co.* v. *Neiswanger,* 41 Kan. 621 (21 Pac. 582, 13 Am. St. Rep. 304), the appellee, a stranger, arrived by rail at Beloit, Kansas, about 5 o'clock p. m., and went immediately into the depot, intending to go to Osborn, in that State, by the next train, which she was informed by the agents of the company would leave at 9:20 that night. Having secured a ticket entitling her to be carried on the appellant's cars to her destination, she left

[36—46 Or.]

the depot, but returned "about dusk" on May 6th, and waited to resume her journey. Her train not having arrived at 11 o'clock p. m., she had occasion to go to the toilet, but, there being none in the building, she went upon the depot platform, which was not lighted, and walking off, sustained an injury, and it was held that the railroad company was liable therefor.

3. In *St. Louis S. W. Ry. Co.* v. *Griffith,* 12 Tex. Civ. App. 631 (35 S. W. 741), the appellee, having secured a coupon ticket for the entire distance, left Gainesville, Texas, with her babe, for Mt. Vernon, in that State, going via Greenville, where she was to change cars. At the latter city she was transferred to the appellant's depot, which she reached at 2 o'clock p. m., and, being a stranger without money, and informed that no hotel or boarding house was within a mile of the station, she concluded to remain in the waiting room until 12 o'clock that night, when the next passenger train for Mt. Vernon would arrive. The station agent, knowing her intention, either consented, or at least made no objection, to her occupying the room until she could resume her journey. About 9:30 o'clock p. m. the appellant's night agent in charge of the depot entered the waiting room, turned down the light, placed his arm around the appellee, and, over her protest, tried to kiss her, and also made improper proposals to her. She pleaded with him to desist, and not molest her, whereupon he returned to his office, and she quietly left the depot with her babe, and went to a private residence, and notified the occupant of the attempted outrage. Mrs. Griffith commenced an action against the railroad company to recover damages for the assault, and, having secured a judgment, it was affirmed on appeal; the court holding that as she possessed a ticket, and had gone to the depot for the purpose of taking passage on the first train that arrived, and, by the assent of the station agent, was permitted to occupy the waiting room, she sustained the relation of a passenger, to whom the company owed a duty to protect, and it was therefore liable in damages for the assault of its agent. In *Missouri Pac. Ry. Co.* v. *Neiswanger,* 41 Kan. 621 (13 Am. St. Rep. 304; 21 Pac. 582), the question of reasonable time before the arrival of a train when a person at a depot intending to take a train may be regarded in

the nature of a passenger was not involved, for, the train having been scheduled to reach the station at 9:30 p. m., and thereafter momentarily expected to arrive, when Mrs. Neiswanger was injured, shows that she was certainly entitled to protection. So, too, in *St. Louis S. W. Ry. Co.* v. *Griffith,* 12 Tex. Civ. App. 631 (35 S. W. 741), the question of reasonable time was not in issue, for Mrs. Griffith's occupancy of the waiting room at the depot was not in pursuance of an absolute right, but resulted from the station agent's knowledge that she intended to remain at the depot 10 hours, waiting the arrival of her train, and his assent thereto. In the case at bar the testimony shows that the agents of the Columbia Southern Railway Co. who operated the special train were informed that plaintiff intended to take passage for Portland on train No. 3 of the other company when it reached Biggs, and, knowing this, they assented to his occupying the car in which he had made the journey from Shaniko until the arrival of the other train. The Columbia Southern Railway Co., by reason of this assent of its agents, thereby treated plaintiff in the nature of a passenger, notwithstanding it had safely carried him the entire distance agreed upon.

4. The train dispatcher of the Oregon Railroad & Navigation Co. had agreed to stop train No. 3 at Biggs if the special train reached that station in time, and he must have known that some passenger would be at the depot intending to go west. This knowledge, however, in the absence of any stipulation to that effect, did not bind the last-named company to light its depot platform until a reasonable time next-prior to the arrival of its west-bound passenger train.

5. The plaintiff, having accompanied the wool buyers going east to their train, returned to the car provided for his accommodation about three hours before train No. 3 was expected to arrive. Whether or not such period of time next prior to the arrival of a train is reasonable during which the Oregon Railroad & Navigation Co. should have kept its depot platform lighted at a station where its night passenger trains were not scheduled to stop, is not now necessary to inquire, for that was a question exclusively for the jury to determine.

·6. In considering the action of the trial court in overruling the motions for judgments of nonsuit interposed on the ground of plaintiff's alleged contributory negligence, we shall for the present treat the question as it relates to the duty of the Columbia Southern Railway Co. only, basing our conclusion on its assent to plaintiff's occupying its car until the arrival of the westbound passenger train on the road of the other company. This car was pro hac vice a depot to all intents and purposes, well lighted, and provided with a suitable toilet room, so that it was unnecessary for plaintiff to leave it, as in the cases of *Missouri Pac. Ry. Co.* v. *Neiswanger,* 41 Kan. 621 (13 Am. St. Rep. 304, 21 Pac. 582), and *Louisville, N. A. & C. Ry. Co.* v. *Treadway,* 143 Ind. 689 (40 N. E. 807, 41 N. E. 794), to obey an urgent call of nature. The testimony shows that the coach provided for plaintiff's accommodation was scented with tobacco smoke, but it nowhere appears in the bill of exceptions that the fumes of that weed were offensive to him, as in the case of *McDonald* v. *Chicago & N. W. Ry. Co.* 26 Iowa, 124 (95 Am. Dec. 114), in which Mr. Chief Justice DILLON said: "If the station room is full, or if it is intolerably offensive by reason of tobacco smoke, so that a passenger has good reason for not remaining there, while this will not justify him in violating reasonable rules and regulations of the company, which are known to him, respecting the place, mode, and time of entering the cars, it will justify his endeavor to enter the cars at as early a period as possible, especially if it is dark and cold without, if in so doing he uses proper care, and violates no rule or regulation of the company of which he has actual knowledge, or which, as a reasonable man, he would be bound to presume existed." At the time plaintiff sustained the injury he did not go upon the station platform for the purpose of entering a car in which he expected to take passage, or to transact any business with either railroad company, nor was he for any reason necessarily compelled to leave the coach which he occupied. His act in leaving the car at the time and under the circumstances indicated, and going to the platform, which he knew was not lighted, is sought to be justified on the ground that he was entitled to walk for exercise, and to secure fresh air, and that he had a right to assume, from the extreme darkness,

and his knowledge that the defendant companies were aware that he was waiting the arrival of a train at a depot jointly used by them, that they had discharged the obligation devolving upon them of making the station platform reasonably safe, and that, relying thereon, he was injured in consequence of their breach of duty, thereby rendering them liable for the damages resulting from the injury which he sustained. He could undoubtedly have secured an abundant supply of fresh air by raising a window of the coach, thereby ventilating it, and hence he was not obliged to leave the car for that purpose.

This brings us to a consideration of the remaining question— whether or not a person sustaining the quasi relation of a passenger can, for the mere purpose of exercise, leave a well-lighted depot, provided with necessary accommodations, and go in the darkness upon a walk surrounding the station, and recover damages for an injury sustained in consequence of the carrier's failure to maintain a railing on or its omission to light the platform. A passenger, before reaching his destination, may leave a car or a boat to transact his own private business at any intermediate station or landing where a stop is made for any reasonable time to receive or discharge passengers; and if, without his fault, he is injured in consequence of the carrier's negligence on any part of the premises set apart by it for the use of the public, or used with its consent, he may recover the damages sustained: 1 Fetter, Carriers, § 234. Thus, in *Dice* v. *Willamette Transp. Co.* 8 Or. 60 (34 Am. Rep. 575, 6 Am. Neg. Cas. 202), the plaintiff, a passenger, before reaching his destination, attempted to leave the defendant's steamboat to transact his own business at a landing where passengers and freight were being discharged, and, the night being dark and rainy, and the lights on the boat and on the wharf insufficient to enable him plainly to see his way, he fell, sustaining an injury, and it was held that he had a right of action against the carrier for its negligence in not providing a safe means of egress from the boat to the wharf.

In *Hrebik* v. *Carr* (D. C.), 29 Fed. 298, notice having been given that a steamer would sail early on a certain morning, the plaintiff and her husband went on board the boat the evening before her departure, and soon thereafter he, in attempting to

cross to the wharf to secure some tobacco, fell from the gang plank and was drowned. In an action to recover for the death it was held that a passenger on board a vessel before she left port had the right to go ashore for the purpose stated, and that it was the duty of the carrier to provide a safe means of passage from the steamer to the pier. In that case, it does not appear that the night had set in, or, if so, that the passageway was not lighted. In deciding the case BENEDICT, J., says: "The necessity on the part of a passenger, who has taken his position as a passenger, to return to the pier, is a common incident to travel. It is constantly done to find lost baggage, to speak to a friend, and may be done to purchase tobacco by any one addicted to the use of that weed. From this necessity arises the obligation on the part of the ship to keep and maintain for the passenger's use, at all proper times, a safe passageway from the steamer to the pier."

In *Alabama G. S. Ry. Co. v. Coggins,* 88 Fed. 455 (32 C. C. A. 1), the appellee, a lineman in the employ of the Western Union Telegraph Co., was traveling in the caboose of a freight train to a point where repairs were to be made. The train on which he was riding stopped at Rising Fawn, Georgia, an intermediate station, at the usual place for the alighting of passengers from freight trains, which was about 1,500 feet from the station proper. The appellee got off the car and started to walk to the station by the only practicable way, which was between the main track and the house track, to see if there was any telegram for him from his employer. As he was going to the station he saw a part of the train on which he came backing towards him on the main line, and as it approached he concluded it would be safer to cross over near the house track, and in doing so he was struck and injured by a switching car on a cut-off. In an action to recover damages for the hurt inflicted the railroad company introduced testimony tending to show that the appellee was loitering along between the tracks, talking with acquaintances whom he met; that he had no reason to anticipate the receipt of a telegraphic order at that point; and that he was standing on or near the track, looking up at the telegraph wires, when struck. The

trial court, having instructed the jury in relation to the degree
of care due from a railroad company to a passenger on a freight
train, said:

"Now, when they reached Rising Fawn, that not being the
plaintiff's place of destination, if he alighted from the car
intending to go direct to the depot for a particular business pur-
pose, and with the intention of returning when that purpose was
accomplished, he would, while going to and from the depot, exer-
cising the proper diligence due from a passenger, remain a pas-
senger and would be entitled to the degree of care belonging to a
passenger. Now, that rule applies until he had time to get off
the car, going along exercising reasonable prudence to do so,
attend to his business (if any he had), and return, and no longer.
The liability of the company to him as a passenger lasted only
so long as to give him a reasonable time in which to get to the
depot and return after transacting his business, and did not
extend to him after the lapse of that time. After that they owed
him no duty, except that which they owed to any stranger—not
to wantonly or unnecessarily injure him. * *

"Now, on the contrary, if, after they had got in the yard, he
got out of the train, without having any business that required
him to go to the depot that not being his point of destination,
or without having any particular business to go to the depot, and
instead of going by the direct and usual route and within a
reasonable time, such as any other man (a prudent man) would
have required to go to the depot, and if, instead of that, he, out
of mere curiosity, got out to look through the yard and talk with
the employees in the yard—if he stopped in the yard and began
to talk and loiter about the yards there in conversation, or if
he began to look at the overhead wires, as one of the witnesses
indicates probably he did (at least, there is a silent proof that
tends to show that)—why, then, in each of these contingencies,
he would cease to be a passenger, but would be there on the
switchyard at his peril; and the only duty the defendant com-
pany would owe to him in such a situation as that would be the
duty not to wantonly or unnecessarily injure him, and they
would owe him no greater duty than they would owe a stranger
in the yard without any business."

A judgment having been rendered against the railroad company, was affirmed on appeal; TAFT, J., in referring to the instructions, saying: "The foregoing states the law correctly, and leaves to the jury the issue in such a way as to enable them, without difficulty, justly to determine whether Coggins was entitled to the high degree of care from the railroad company due a passenger when he was struck." Further in the opinion it is said: "The authorities are not quite so uniform upon the question whether the obligation of the carrier extends to the same degree of care over the safety of its passengers when they alight at intermediate stations and go to the station house while the train is waiting. But we think the weight of authority, reason and custom all require us to hold that where a passenger, without objection by the company or its agents, alights at an intermediate station, which is a station for the discharge and reception of passengers, for any reasonable and usual purpose, like that of refreshment, of the sending or receipt of telegrams, or of exercise by walking up and down the platform, or the like, he does not cease to be a passenger, and is justified in the belief that the company is exercising due care for his safety." In that case nothing is said as to what time the appellee was injured, but, as it is intimated that he was looking up at the telegraph wires when he was struck, it is to be inferred that it was daylight. This being so, what is said in the opinion about the right of a passenger to walk up and down the depot platform for exercise can have no application to explorations made at such a place in utter darkness.

In *St. Louis & S. F. Ry. Co.* v. *Coulson,* 8 Kan. App. 4 (54 Pac. 2), W. F. Coulson was a passenger on appellant's train, which stopped at an intermediate station for dinner. He left the car in which he was riding, and went to an eating house, where he secured his lunch, and, having returned, he passed through a car to the depot platform, where, having been informed by the conductor that the train would start in three or four minutes, he walked to the platform on the opposite side, and stood five or six feet from the end of a coach. He then started towards the car, whereupon he caught his foot in a warped plank, and, falling, put out his hand for protection, and

as he did so the train simultaneously started, whereby he was injured. A judgment having been rendered against the railroad company for the damages sustained, it was contended by the appellant that its obligation under the contract ceased when Coulson got his lunch and returned to the car. The court, discussing this question, say: "We cannot consent to this doctrine. The train had stopped for dinner. The passengers were invited to this platform. It was maintained for their safety and convenience, and they were expected to get on and off. This was involved in and connected with the regular passenger service of the road. The act of Coulson in leaving the train at this particular point, after he had returned from his luncheon, is not sufficient to justify this court in declaring as a matter of law that he was negligent, or that the obligation of the company to provide safe passage for him had been fulfilled, or that the relationship as a passenger to the company had for the time ceased." In that case the injury occurred at the noon hour, when the passenger was undoubtedly afforded sufficient natural light plainly to see the passageway that had been provided by the railway company for the accommodation of the traveling public.

In *Chicago, etc., Ry. Co.* v. *Woolridge,* 32 Ill. App, 237, the appellee having a railroad ticket, was walking on a depot platform about 9 o'clock p. m., waiting the departure of his train, which stood on a side track, and was expected to pull out after a "rally" meeting adjourned. Another train coming in rapidly hit a baggage truck which was being pulled on the platform, causing it to strike and injure him. In an action to recover the damages resulting from the hurt the court refused to instruct the jury that unless the appellee was at the place where he was injured on business with the railroad company, or was there to take a train about to depart from the station, or to meet some one expected to arrive on the train which struck the baggage truck, or to see some one about to leave, then, if there was a suitable waiting room, though he was expecting to depart on some other train for which he might have been waiting, he had no right to be on the depot platform at the time he was injured. A judgment having been rendered against the company, was affirmed on appeal; the court, in referring to the charge

requested, saying: "We do not think this states the law cor-
rectly. To hold that a passenger waiting at a railroad depot for
his train to arrive must remain in the waiting room, and that if
he goes out upon the platform at any time before it becomes
necessary to board his train he is guilty of such negligence as to
prevent his recovery for an injury like the one in question, is not
consistent with reason or common sense." In that case the bag-
gage master testified that he lighted the gas at the baggage room
door before the arrival of the train causing the injury. The
depot platform must also have been lighted, for Woolridge testi-
fied that he saw the baggage truck when it was struck by the
incoming train.

In *Lemery* v. *Great Northern Ry. Co.* 83 Minn. 47 (85 N. W.
908), the plaintiff, having purchased a railroad ticket, entered a
day coach at Duluth, Minnesota, for a continuous passage to
Park River, North Dakota, on defendant's through train that did
not stop at intermediate stations to receive or discharge pas-
sengers. After the train started, plaintiff left the car originally
taken, passed to the rear into a sleeping car, going through a
coach occupied by a military company that maintained guards at
each entrance of the car, but passengers were not prevented from
passing through it when necessary. As the conductor entered
the sleeper, plaintiff discovered that he had lost his ticket, and,
being compelled to pay his fare, he demanded a receipt therefor,
but none was given him, the conductor claiming that his blank
acknowledgements of payment were at the other end of the train.
The plaintiff remained in the sleeper until the train arrived at
Grand Rapids, Minnesota, where it was stopped at night, when
it was very dark, for the purpose only of taking water. When
the train came to a halt, plaintiff left the sleeper, as he insisted,
to find the conductor and again to demand a receipt, and also to
pass around the car occupied by the militia and enter the day
coach, claiming that he was not permitted longer to remain in
the sleeper, and that the military guards would not allow him to
pass through the car which was under their care and protection.
In alighting at the station plaintiff fell between the steps of the
sleeper and the depot platform, which was not lighted, sustaining
an injury. An action having been begun to recover the damages.

resulting from the hurt sustained, a judgment of nonsuit was rendered, which was affirmed on appeal, the court finding that the reasons assigned by plaintiff for going to the station platform were subterfuges, and holding that a through passenger on a train which did not stop at intermediate stations, who leaves such train without the knowledge, consent or invitation of the company at any intermediate station at which the train may stop for some purpose necessary to its operation and manage· ment only, abandons for the time being his relation as a passenger, and assumes all the risks incident to his movements. In rendering that decision Mr. Justice BROWN, speaking for the court, says: "In the case of a local train the company is bound to know that passengers may be received and discharged at all stations at which a train may stop for that purpose, and is required by the rule to keep the approaches to the train in a safe condition for their egress and ingress." Further in the opinion it is said: "This was not a local train, but a through train, and the plaintiff was a through passenger. The train did not stop at Grand Rapids to receive or discharge passengers. There was no invitation held out to plaintiff to leave the train at that station. There was no occasion for him to do so, and he must be taken to have assumed all risks incident thereto. There was not only no invitation, express or implied, to passengers to leave the train at this station, but the fact that the station platform was unlighted was in the nature of a warning to them to remain on board."

7. The cases to which attention has been called, illustrating the right of a passenger, without forfeiting his relation as such, to leave a car or a boat at an intermediate station or landing to transact business of his own, or for his own pleasure, where a stop is made to receive or discharge passengers, are relied upon by plaintiff's counsel to justify their client in assuming from the unlighted platform that it was safe for him to walk thereon. An examination of these cases will show that *Dice* v. *Willamette Transp. Co.* 8 Or. 60 (34 Am. Rep. 575, 6 Am. Neg. Cas. 202), is the only one cited in which judgment is given for injuries received in the darkness by a passenger at an intermediate station or landing by leaving a car or a boat to transact business not

connected with the carrier, and in that case it will be remembered that the steamboat and the wharf were lighted, but not sufficiently to enable the plaintiff to discover and avoid the danger to which he was exposed. In that case, the boat having made a landing at night where passengers and freight were being discharged, Dice might reasonably have inferred from the light on the wharf and on the steamer, which he must have seen, that the passageway was sufficiently illuminated to enable him safely to go ashore. In the case at bar, if the plaintiff had necessarily been compelled to leave the car because the Columbia Southern Railway Co. neglected to furnish suitable accommodations, or if the train of the other company, upon which he expected to take passage, was approaching Biggs Station, so that to board it he was obliged to cross the depot platform in the darkness, a very different rule of law would be applicable. The right of a passenger, before reaching his destination, to leave a car and to walk on a depot platform for exercise, when the train is stopped in daylight, to receive or discharge passengers, or at night, even, when the walk is sufficiently illuminated, is admitted. The vibration of a car in rapid motion prevents a passenger from materially changing his position in a seat, the occupation of which for several hours necessarily produces extreme tension of the muscles of the lower limbs, to relax which relief is found in walking, and, as this cannot readily be secured in a car, it must be obtained, if at all, outside the coach, and when it is at rest. When a train is stopped in daylight for any reasonable length of time to receive or discharge passengers an invitation is thereby tacitly extended by the railroad company to the passengers in the coaches to alight for a few minutes' rest and invigoration by a change of position and a respiration of pure air. The same invitation, it would seem, must also be offered at night where a train is stopped for a reasonable time to receive or discharge passengers at a station, the platform of which is well lighted. A passenger on a train, before reaching his destination, cannot, in reason, be invited to leave the car every time a stop is made at night to receive or discharge passengers. If a contrary rule were to obtain, it would necessarily follow that a railroad company would not venture to stop a train when flagged at night at an insig-

nificant station, the platform of which was not illuminated, however urgent might be the call to board the train.

When the platform of a depot at which a train stops at night is not illuminated, the darkness is a notice to passengers in the cars who are not obliged to depart at that station to remain in the coaches: *Lemery* v. *Great Northern Ry. Co.* 83 Minn. 47 (85 N. W. 908). So, too, where a person, intending to take a train, goes at night to a well-lighted waiting room of a depot, and, leaving it, walks to an unlighted freight platform, and there sustains an injury, his contributory negligence precludes a recovery: *Gunderman* v. *Missouri, etc., Ry. Co.* 58 Mo. App. 370. In that case the plaintiff, knowing the construction of the depot, went to a platform not intended to be used by passengers. It is cited, however, to show that an unlighted way imparts notice to all persons except such as are necessarily compelled to pass over it. In deciding that case the court, referring to the plaintiff, say: "He wantonly left the comfortable waiting room and well-lighted passenger platform of defendant, and sauntered forth into the darkness, and upon the defendant's freight platform, and without there giving heed to the existing conditions, patent to his senses, and which were sufficient to have warned an ordinarily prudent man of the probable danger of proceeding further, he persisted in going forward until he fell into the pit. He was guilty of such contributory negligence as must preclude his recovery." To the same effect, see *Grimes* v. *Pennsylvania Co.* (C. C.), 36 Fed. 72.

In the case at bar plaintiff had crossed the depot platform several times in daylight before he was injured and, though he testified that his attention was never called to the condition of the ground at the west end of the platform, he knew the south side of the walk surrounding the building was elevated while the north side was level with the track of the Oregon Railroad & Navigation Co. Knowing these facts, reason must have taught him that the surface of the ground at the west end of the platform descended to the south, unless it had been graded up to that line.

If it was incumbent upon either of the defendants to light the depot platform three hours before a train was expected to arrive,

the failure in this respect was known to the plaintiff, who, when he was injured, was not necessarily compelled to leave the well-lighted car that had been provided for his accommodation; but, having done so, on one of the darkest nights he ever saw, his injury results from his own contributory negligence, thereby precluding a recovery of damages for the hurt sustained: *Massey* v. *Seller,* 45 Or. 267 (77 Pac. 397); *Missouri, K. & T. Ry. Co.* v. *Turley,* 85 Fed. 369 (29 C. C. A. 196); *Emery* v. *Chicago, M. & St. P. Ry. Co.* 77 Minn. 465 (80 N. W. 627).

There being no conflict in the testimony, an error was committed in refusing to give a judgment of nonsuit in favor of each defendant. The judgment is therefore reversed, and the cause remanded, with directions to sustain the motions interposed.                                              Reversed.

Decided 3 July, 1905.